UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GOSMILE, INC., a Delaware Corporation,

                              Plaintiff,

            -against-

DR. JONATHAN B. LEVINE, D.M.D. P.C., a New York corporation, and DR. JONATHAN B. LEVINE, an individual,

                              Defendants.

Index No. 10 CV 8663 (PKC)(DCF)

DECLARATION OF
DR. JONATHAN B. LEVINE

---

DR. JONATHAN B. LEVINE, declares under the penalties of perjury, pursuant to 28 U.S.C. § 1746 that:

1. I am the principal of Dr. Jonathan Levine, D.M.D. P.C. ("Levine P.C.") I submit this declaration in opposition to Plaintiff GoSMILE, Inc.'s ("Plaintiff" or "GoSMILE") motion for a preliminary injunction.

<u>My Past Affiliation With GoSMILE</u>

2. I am an aesthetic dentist and prosthodontist with a practice in New York City.

3. In 2002, I co-founded GoSMILE, together with my wife, Stacey Levine.

4. In 2003, I sold a majority interest in GoSMILE to outside investors. I remained an officer, director, and shareholder of GoSMILE.

5. While an officer of GoSMILE, I was personally responsible for the development of many of the products that GoSMILE markets today.

6. In July 2007, GoSMILE's outside investors, led by California-based private equity investor, John C. Hansen, forced me out of GoSMILE.

7. My ouster from GoSMILE led to litigation in New York State over control of GoSMILE, Hansen's self-dealing and misuse of corporate funds, monies owed, ownership of

1164517-2

GoSMILE's intellectual property, and my ability to compete with GoSMILE. That matter was resolved by a Settlement Agreement, dated April 21, 2008 (the "Settlement Agreement"). Among other things the Settlement Agreement contained complete and mutual releases, provided that GoSMILE was prohibited from using my name and likeness as of July 2008, that I was free to develop new innovations within my dental practice, and provided that I could actively compete with GoSMILE after July 10, 2009. A true copy of the Settlement Agreement is annexed as Exhibit A.

8. In January 2009, GoSMILE commenced an action against me in federal court, *GoSMILE Inc. v. Levine, et al.*, 09 Civ. 840 (S.D.N.Y.) (LAK), which was dismissed on procedural grounds.

9. Thereafter, in April 2009, GoSMILE commenced another action in New York County Supreme Court, *GoSMILE, Inc. v. Jonathan B. Levine, D.D.S., et al.*, Index No 601148/2009 (Sup. Ct. N.Y. Co.) (the "State Court Action").

Formation of GLO Science, LLC

10. In 2009, I founded GLO Science, LLC ("GLO Science"), to develop and eventually sell teeth whitening products.

11. I chose the name GLO Science because "GLO" is an acronym for "Guided Light Optics," the teeth whitening technology I developed for use in GLO Science's products. The innovation uses a mouthpiece to guide light to the teeth, thus the name "Guided Light Optics." "GLO" also was chosen because it evokes the word "glow," and a glowing smile. GLO Science's products will be used by consumers to give them glowing and attractive teeth.

12. GLO Science is a start-up company and has no full-time employees.

13.     Along with a number of outside investors, I have invested considerable amounts of money in GLO Science and have established meaningful relationships with leading vendors, including home shopping television channels and retail stores.

## Theft of Trade Secrets by GoSMILE

14.     In October 2008, I terminated my employee Leslie French ("French") from my dental practice for performance based reasons.

15.     I understand that GoSMILE flew French to its headquarters in California where, upon information and belief, she provided GoSMILE with stolen trade secret information, including information regarding my new Guided Light Optics technology.

16.     Upon information and belief, French and GoSMILE also surreptitiously obtained documents from another then-employee, Suzanne Della Pella, who was a friend of French and whom French originally introduced to my practice.

17.     Evidence of French's theft of GLO Science's trade secrets has been turned over to the New York County District Attorney's Office, which I understand has indicated it will not prosecute until civil litigation is concluded.

18.     I also understand that GoSMILE and French have entered into a "joint defense agreement" and that GoSMILE has refused to produce the supposed joint defense agreement and most of the communications between it and French in the State Court Action.

## GLO Science's Planned Product Launch

19.     GLO Science plans to launch its first products in the coming weeks. GLO Science was scheduled to launch three personal teeth whitening products on a televised home shopping network on January 21, 2011. The specific products and their corresponding trademarks are:

| Product | Trademark |
|---|---|
| Personal Teeth Whitening Device (controller, mouthpiece, charging unit, whitening gel vials and case) | GLO ı Brilliant Personal Teeth Whitening Device |
| Teeth Whitening Gel Vials | GLO ı Brilliant Whitening Gels |
| Teeth Whitening Mouthpiece and Case | GLO ı Brilliant Mouthpiece and Case |

20. In light of the January 20, 2011 hearing date, I am now scrambling to salvage a February 2011 launch with a television home shopping network.

21. GLO Science was also planning to launch those same three products, with the same trademarks, at an upscale retail store and on its website in March 2011.

22. The "Personal Teeth Whitening Device" is a kit that includes a controller, mouthpiece, charging unit, whitening gel vials, and case. Each component of the kit, other than the mouthpiece, is individually marked with the "glo" logo. The teeth whitening gel vials, mouthpiece and case will also be marked and sold separately. These products will be featured on GLO Science's website at gloscience.com.

23. Attached as Exhibit B are true and accurate images of components and packaging to be used in connection with GLO Science's products.

24. As one case see from the images, on GLO Science's products and packaging, the word "glo" appears in all lower-case letters. The "g" of "glo" is intentionally depicted in a manner that is similar to the number "8" to reflect the products' eight-minute tooth whitening procedure.

25. The styling of GLO Science's products is radically different and, in my view, superior to GoSMILE's.

26. In my clinical experience, the functionality and efficacy of GLO Science's products far exceeds GoSMILE's and even surpasses the standard set by professional teeth

4

1164517-2

whitening. Using the light and heat of professional whitening in a closed system mouthpiece that prevents oxygen escape, the guided light optics "G.L.O." technology is a true game changer. This has never been done before and is the basis for GLO Science's 13 pending patents. GLO Science's products will revolutionize at home teeth whitening and render other products in the category, including GoSMILE's, obsolete.

27. I understand that GoSMILE alleges in its Complaint that GLO Science intends to use the slogan "GLO SMILE WHITENING SYSTEM," or other marks or slogans containing the phrase "GLO SMILE." To be clear, GLO Science has no intent to use and will not use the name "GLO SMILE" with any of its products.

28. The terms "GLO Professional Smile Whitening System" and "GLO | Brilliant Smile Whitening System" may have had limited appearances on early test iterations of web pages but were removed. To be clear, GLO Science has no intent to use and will not use either term with any of its products.

29. Both GoSMILE and GLO Science's products are relatively expensive compared to other at home products. For example, GoSMILE's "Smile Whitening Light System" is sold through GoSMILE's website for $198.00. *See* Annexed Exhibit C, a true copy of a printout on January 3, 2011 from the web address http://www.gosmile.com/shop/sets-kits-and-more/teeth-whitening-light.html. GLO Science expects its Personal Teeth Whitening Device to retail for $275. By contrast, home teeth whitening products such as Crest Whitestrips typically retail for under $50.

<u>GLO Science Will Be Significantly Harmed by an Injunction</u>

30. If the Court were to order a preliminary injunction against the launch of GLO Science's products, the very existence of GLO Science would be at risk. GLO Science is a new company about to embark on its first product sales. It has no existing revenue streams. GLO Science's future is reliant on the imminent initial product launch. Any delay in the launch of

GLO Science's initial sales would be very damaging, and perhaps even fatal, to the viability of the company.

31.   GLO Science projects revenues from the first year of its sales to be at least $9,000,000 - $10,000,000. If GLO Science is enjoined from selling its products for any amount of time, those revenues will be at risk.

32.   Additionally, any delay in the launches could render GLO Science liable to return advances given to it by its retail partners. Thus, GLO Science could be liable for damages of more than $1,000,000 dollars if the injunction requested by Plaintiff is granted.

Dated: January 4, 2011

_____
DR. JONATHAN B. LEVINE