UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GO SMILE, INC., a Delaware Corporation,<br><br>         Plaintiff,<br><br>    -against-<br><br>DR. JONATHAN B. LEVINE, D.M.D. P.C., a New York corporation, and DR. JONATHAN B. LEVINE, an individual,<br><br>         Defendants. | Index No. 10 CV 8663 (PKC)(DCF) |

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS

              OLSHAN GRUNDMAN FROME
              ROSENZWEIG & WOLOSKY LLP
              *Attorneys for Defendants*
              Park Avenue Tower
              65 East 55th Street
              New York, New York 10022
              (212) 451-2300

1159512-1

Table of Contents

Page

Preliminary Statement ................................................................................................................. 1

Statement of Facts ....................................................................................................................... 1

    The Parties ...................................................................................................................... 2

    GoSMILE's Trademarks ................................................................................................. 3

    The GLO Trademarks .................................................................................................... 3

    The Website www.gosmileaesthetics.com ..................................................................... 4

    The Status of the Case ................................................................................................... 5

Argument ..................................................................................................................................... 6

    I     GOSMILE'S DECLARATORY JUDGMENT COUNT SHOULD BE DISMISSED ................................................................................................................. 6

    II    GOSMILE HAS NOT STATED A CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT AGAINST DEFENDANTS ........................... 7

        A.    The Standard of Review ........................................................................... 7

        B.    There Is No Likelihood of Confusion Between the GoSMILE Marks and the GLO Marks ..................................................................... 8

    III   GOSMILE'S STATE LAW CLAIMS IN COUNTS FOUR AND FIVE SHOULD BE DISMISSED ............................................................................... 12

    IV   GOSMILE'S ANTI-CYBERSQUATTING CLAIM SHOULD BE DISMISSED ............................................................................................................... 13

Conclusion ................................................................................................................................ 17

Defendants Dr. Jonathan B. Levine D.M.D. P.C. ("Levine P.C.") and Dr. Jonathan B. Levine ("Dr. Levine") (collectively "Defendants"), by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP and Davidoff, Malito & Hutcher LLP, submit this memorandum of law in support of their motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

Preliminary Statement

GoSMILE asserts claims under Sections 32 and 43 of the Lanham Act for trademark infringement and trademark dilution, as well as certain state law claims and a declaratory judgment claim, based on Defendants' intended use of marks containing the mark "GLO" for teeth whitening products. GoSMILE alleges that these marks are confusingly similar to its own so-called "GO-based family" of trademarks. Because the marks Defendants allegedly will use are wholly dissimilar on their face to GoSMILE's marks, GoSMILE's claims against Defendants should be dismissed.

GoSMILE's claim against Dr. Levine alleging violation of the Anticybersquatting Consumer Protection Act by his registration and use of the domain name www.gosmileaesthetics.com should also be dismissed. GoSMILE concedes that Dr. Levine was the co-founder of GoSMILE and registered the domain name while he was an officer, director, shareholder, and primary spokesperson for GoSMILE. Because Dr. Levine was associated with GoSMILE when he registered the www.gosmileaesthetics.com domain name, GoSMILE does not allege facts that would support a plausible claim that Dr. Levine registered and used the www.gosmileaesthetics.com in bad faith. Accordingly, this claim should also be dismissed.

Statement of Facts

Although Defendants have provided a comprehensive overview of this action in a separate, contemporaneously filed brief in opposition to plaintiff's motion for a preliminary injunction, the factual basis for this motion, as required by Rue 12(b)(6), is limited to the

allegations in the Complaint, the exhibits annexed thereto, and the documents incorporated by reference therein.  *Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (citing *Yak v. Bank of Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001).  Defendants' use of those allegations here is not an acknowledgement that plaintiff's allegations are correct, truthful, accurate or complete.

<u>The Parties</u>

Plaintiff GoSMILE, Inc. ("Plaintiff" or "GoSMILE") develops, manufactures, markets, and distributes over-the-counter teeth whitening and oral care products to consumers.  (Docket No. 1, Complaint ¶ 12)  GoSMILE's products are sold over the internet, and at prestige retailers including Sephora U.S.A. ("Sephora"), Nordstrom, and Saks. (*Id.*)  GoSMILE is a corporation organized under the laws of Delaware, with its principal place of business in Berkeley, California. (*Id.* ¶ 7)

Defendant Dr. Levine co-founded GoSMILE in 2002 with his wife, Stacey Levine.  (*Id.* ¶ 13)  In 2003, Dr. Levine sold a majority interest in GoSMILE to outside investors, but remained actively and publicly involved with GoSMILE and its products, and continued to be shareholder and compensated officer and director of GoSMILE.  (*Id.*)  He also remained the primary spokesperson for the company at retailer events and public appearances in the media.  (*Id.*)  In April 2008, after a dispute with GoSMILE's board and certain shareholders, Dr. Levine and his wife sold their remaining interest in GoSMILE to outside investors, and ceased any affiliations with the company.  (*Id.* ¶ 15)  Dr. Levine resides in New York City.  (*Id.* ¶ 9)

Levine P.C. is a professional corporation organized under the laws of New York, with its principal place of business in New York City.  Dr. Levine is the chairman and/or chief executive officer of Levine P.C.  (*Id.* ¶ 8)

2

GoSMILE's Trademarks

GoSMILE owns a number of so-called "GO"-based trademarks for its teeth whitening and oral care products, including several combinations of the words "Go" and "Smile." (*Id.* ¶ 17)

GoSMILE also claims to own the common law trademark "SMILE WHITENING SYSTEM," which it first used in commerce in December, 2008, in connection with 7 and 10 day whitening kits. (*Id.* ¶ 18) GoSMILE claims to have expanded its use of this trademarked slogan in connection with its tooth whitening light device marketed under the trademark GO WHITER. (*Id.*) GoSMILE's trademark registrations and claimed common law trademark SMILE WHITENING SYSTEM are collectively referred to herein as the "GoSMILE Trademarks."

GoSMILE recently introduced an intra-oral tooth whitening light device sold directly to consumer for home use, marketed under the trademark GO WHITER (the "GoSMILE Light Device"). (*Id.* ¶ 20) The packaging for the GoSMILE light device features the GoSMILE brand name and bears the slogan SMILE WHITENING SYSTEM. The GoSMILE Light Device is currently sold exclusively through QVC, and will also be sold through prestige retailers. (*Id.*)

In the packaging for GoSMILE's products, the GoSMILE mark appears in all capitalized letters, except for a lower-cause "i" in "SMiLE." (*Id.* Exs. 3-5) The letters of the word "GO" are formed by blocks. (*Id.*)

The GLO Trademarks

Levine P.C. filed an application in May, 2008 to register the mark GLO for mouth guards for use in protecting teeth during medical or dental procedures and for teeth whitening services. (*Id.* ¶ 26) The trademark was registered November 9, 2010. (*Id.* Ex. 7)

In May, 2008, Levine P.C. also filed an intent-to-use application to register the service mark G.L.O. for teeth whitening services. (*Id.* ¶ 27)

3

1159512-1

On or about August 3, 2009, Levine P.C. filed intent-to-use application for GLO SCIENCE for a teeth whitening kit, teeth whitening preparations, and teeth whitening services. (*Id.* ¶ 28).

On July 28, 2009, Dr. Levine registered the domain name www.gloscience.com. (*Id.* ¶ 29*)* The website went live in or about September 2010, and stated that "glo $_{tm}$ GLO Brilliant Smile Whitening System coming soon." (*Id.* ¶ 29, Ex. 11)[1]

The Complaint further alleges that Levine P.C. has been actively marketing teeth whitening products under the GLO Trademarks, including the GLO Light Device, to potential retailers and distributors, including HSN, Inc. QVC, and Sephora, with planned launches in January and spring of 2011. (*Id.* ¶¶ 35-37)  The Complaint also alleges that Levine P.C. has had communications with several fashion and beauty magazines regarding the planned launch of teeth whitening products using some or all of the GLO Trademarks, including the GLO Light Device. (*Id.* ¶ 39)

The Website www.gosmileaesthetics.com

In September 2005, while Dr. Levine was still affiliated with GoSMILE, Dr. Levine registered the domain name gosmileaesthetics.com in his individual capacity. (*Id.* ¶ 21)  Dr. Levine, and his wife Stacey Levine, began using the email addresses jlevine@gosmileaesthetics.com and Stacey@gosmileaethetics.com. (*Id.*)

---

[1] Currently, the website www.gloscience.com does not refer to a "GLO Brilliant Smile Whitening System." Rather, it states "Introducing GLO Science$^{TM}$ breakthrough technology," and refers to the "GLO Brilliant Personal Teeth Whitening Device $^{TM}$". (*See* Sloane Aff., Docket No. 29-2, ¶ 11, Ex. 12)

GoSMILE also alleges that Levine P.C. will use the slogan GLO SMILE WHITENING SYSTEM, for a light device ("GLO Light Device") and associated teeth whitening products to be sold via retail to consumers for home use. (Complaint ¶¶ 30, 32) GoSMILE further alleges that this information was recently put on Levine P.C.'s website, http://jonathanblevine.com/glo-whitening-tm. (*Id.* ¶¶ 30, 32, Ex. 12)  However, there is no longer a webpage at that web address. (*See* Sloane Aff., Docket No. 29-2, ¶ 12, Ex. 14)

According to the complaint, Dr. Levine continued using the gosmileaesthetics.com domain name in connection with his website and his email address for a least a year after leaving GoSMILE. (*Id.* ¶ 22) Dr. Levine left GoSMILE in April 2008. (*Id.* ¶ 15) GoSMILE does *not* allege, however, that Dr. Levine currently continues to use the gosmileaesthetics.com domain name, and implies he ceased using it more than one and half years ago.

The Status of the Case

GoSMILE filed its Complaint on November 16, 2010. The Complaint alleges eight counts:

- The First Count against Levine P.C. seeking a declaratory judgment that Levine P.C.'s use of the GLO Trademarks would violate Section 32 and 43(a) of the Lanham Act, would violate New York General Business Law § 360-k, and would constitute unfair competition under New York law; (*Id.* ¶¶ 49-59)

- The Second and Third Counts against Levine P.C., alleging infringement of registered trademarks under § 32 of the Lanham Act, and false designation under § 43(a) of the Lanham Act, by use of the GLO Trademarks; (*Id.* ¶¶ 60-76)

- The Fourth and Fifth Counts against Levine P.C., alleging unfair competition and trademark infringement under New York law, by use of the GLO Trademarks; (*Id.* ¶¶ 77-87)

- The Sixth and Seventh Counts against Dr. Levine, alleging infringement of registered trademarks under § 32 of the Lanham Act, and false designation under § 43(a) of the Lanham Act, by use of the gosmileaesthetics.com website; (*Id.* ¶¶ 88-104) and

- The Eighth Count against Dr. Levine, alleging violation of the Anticybersquatting Consumer Protection Act by use of the gosmileaesthetics.com website. (*Id.* ¶¶ 105-112)

On November 17, 2010, GoSMILE's counsel wrote the Court requesting a conference to discuss its contemplated motion for a preliminary injunction. At a scheduling conference held December 16, 2010, the Court set December 20, 2010 as the deadline for GoSMILE to file its motion for a preliminary injunction, and set January 4, 2011 as the deadline for defendants to answer or move against the Complaint, and to oppose GoSMILE's motion for preliminary injunction.

By this motion, Defendants move to dismiss Counts One through Five and Count Eight of the Complaint.

## Argument

### I

### GOSMILE'S DECLARATORY JUDGMENT COUNT SHOULD BE DISMISSED

The First Count for declaratory judgment against Levine P.C. is premised on the substantive claims in the Second, Third, Fourth, and Fifth Counts of the Complaint. Because the declaratory judgment claim solely involves legal issues that will be resolved in the course of litigation of the other causes of action, the claim is duplicative and should be dismissed. *Amusement Industry, Inc. v. Stern*, 693 F.Supp.2d 327, 359 (S.D.N.Y. 2010); *DIRECTV Latin America, LLC v. Park 610, LLC*, 691 F.Supp.2d 405, 433-34 (S.D.N.Y. 2010). Alternatively, it should be dismissed for the substantive problems in the Second, Third, Fourth and Fifth Counts.

1159512-1

II

## GOSMILE HAS NOT STATED A CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT AGAINST DEFENDANTS

The Second and Third Counts of the complaint allege trademark infringement and false designation of origin under Sections 32 and 43(a) of the Lanham Act against Levine P.C. Because, as a matter of law, there is no likelihood of confusion between GoSMiLE's trademarks and the Defendants' trademarks, GoSMILE's trademark infringement claims should be dismissed.

A.   The Standard of Review

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As recently explained by the Supreme Court in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 US ---, 129 S. Ct. 1937 (2009), a pleading must be dismissed unless it alleges "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). It is no longer enough to make conclusory accusations of wrongdoing, or simply recite the legal elements of a claim; rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

Under the *Twombly-Iqbal* standard, the adjudication of a motion to dismiss is a two-step analysis. First, the court must identify the Complaint's conclusory allegations, which are not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1949-50. Second, the court must consider whether the remaining, non-conclusory allegations create a "reasonable inference" that the

7

defendant is liable for the alleged conduct. *Id*. at 1949. That plausibility determination requires the Court, drawing on its "judicial experience and common sense," to determine whether the counterclaim's factual allegations nudges the Complaint "'across the line from conceivable to plausible.'" *Id*. at 1950-51 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of `entitlement to relief.'"

*Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57).

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Zdenek Marek*, 348 F.Supp.2d at 279 (citing *Yak v. Bank of Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001).

      B.      There Is No Likelihood of Confusion Between
               the GoSMILE Marks and the GLO Marks

To state a claim under either Section 32 or Section 43 of the Lanham Act, a plaintiff must allege facts that demonstrate a likelihood of confusion between its marks and the defendant's. *THOIP v. Walt Disney Co.*, --- F.Supp.2d ---, No. 08 Civ. 6823(SAS), 2010 WL 3219349, at *6 (S.D.N.Y. Aug. 13, 2010). To determine the likelihood of confusion, courts in the Second Circuit apply the eight factors set forth in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): (1) the strength of plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products; (5) actual confusion among consumer; (6) the

8

defendant's intent in adopting its mark (i.e. bad faith); (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group.  *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 162 (2d Cir. 2004).

A claim may be dismissed under Rule 12(b)(6), however, without analysis of each of the *Polaroid* factors.  In a trademark infringement action, "dismissal under 12(b)(6) has . . . been found appropriate where parties' marks were so 'obviously dissimilar' on their faces as to 'overwhelm[] any possibility of confusion' among consumers, and render consideration of the remaining *Polaroid* factors superfluous."  *Energy Intelligence Group, Inc. v. UBS Fin. Servs.*, No. 08 Civ. 1497(DAB), 2009 WL 1490603, at *7 (S.D.N.Y. May 22, 2009) (quoting *Le Book Publishing, Inc. v. Black Book Photography, Inc.*, 418 F.Supp.2d 305, 311 (S.D.N.Y. 2005); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) (in copyright infringement action, district court may "resolve the question of substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss").  This is such a case.  GoSMILE's marks are so dissimilar to Defendants' marks on their face that GoSMILE's trademark claim should be dismissed as a matter of law.

To analyze the similarity of marks, "courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers."  *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005); *see also Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000) ("[I]n determining whether two marks are confusingly similar, we must 'appraise the overall impression created by . . . the context in which they are found and consider the totality of factors that could cause confusion

9

among prospective purchasers.'") (quoting *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998).

GoSMILE's complaint is based solely on the premise that Levine P.C.'s use of the word "GLO" makes its marks similar to GoSMILE's marks. Overwhelming and well-known authority from the Southern District forecloses the primary basis of GoSMILE's suit. The common use of some same or similar words does not render two marks similar. *See Nabisco*, 220 F.3d at 46-47 (no similarity between marks "ICEBREAKERS" and "DENTYNE ICE" despite common use of word "ICE"); *Lee Myles Auto Group v. Fiorillo*, No. 10 Civ. 6267(PKC), 2010 WL 3466687, at *6 (S.D.N.Y. Aug. 25, 2010) (Castel, J.) (no similarity between defendant's marks "Hi Miles Transmissions" and "Hi Miles Auto Repair" and plaintiff's "Lee Myles" marks); *Medici Classics Prods. Inc. v. Medici Group, LLC*, 683 F.Supp.2d 304 (S.D.N.Y. 2010) (no similarity between plaintiff's mark "Medici Classics Productions" and defendant's "Medici Arts" and "Medici Masters," despite common use of word "Medici" in same placement); *Energy Intelligence Group*, 2009 WL 1490603, at *7 (no similarity between plaintiff's publication and trademark "International Oil Daily" and defendant's publication "UBS Investment Research - Daily Oil News," despite common use of words "oil" and "daily").

The words "Go" and "glo" are different in appearance, sound and meaning. One is a two-letter word, the other a three-letter word. GoSMILE cannot claim the exclusive right to use all short words that start with "G" and end in "O." Moreover, even marks that use words that sound the same or similar, but are spelled differently have been held not to be confusingly similar. *See Lee Myles Auto Group*, 2010 WL 3466687, at *6 (marks containing words "Myles" and "Miles" not similar); *Cortex Corp. v. W. L. Gore & Assocs., Inc.*, 1 F.3d 1253 (Table) 1993 WL 217185, at *1-*2 (Fed. Cir. June 21, 1993) (finding "Cortex" and "Gore-Tex" dissimilar).

10

Nor do "Go" and "glo" share a similar meaning. "GLO" is not a word in the English language. It has no meaning. The word that it sounds similar to and most resembles — "Glow" — does not mean anything similar to the word "Go" and is not a mark to which GoSMILE makes any claim.

GoSMILE's attempt to find a similarity between its marks and the GLO Trademarks based solely on the purported similarity between the words "Go" and "GLO" flies in the face of overwhelming authority holding marks that use some of the same or similar words were dissimilar. *See Nabisco*, 220 F.3d at 46; *Lee Myles Auto Group* 2010 WL 3466687, at *6 *Medici Classics Productions*, 683 F.Supp.2d at 311; *Energy Intelligence Group,* 2009 WL 1490603, at *7; *Le Book Publishing* 418 F.Supp.2d at 311-12.

In assessing whether marks are similar, courts look at the words used, as well as the overall display, including the color and style of the packaging, and the size and font of the text. *Nabisco*, 220 F.3d at 47-48 (comparing typefaces, styles, colors and packaging of marks); *Medici*, 683 F.Supp.2d at 311 (comparing typeface, style, and overall impression of marks).

The overall impression created by the context in which the GoSMILE Marks and the GLO Marks are found is one that is not confusingly similar. The GoSMILE mark appears in all capitalized letters, except for a lower-cause "i" in "SMiLE." (Complaint Exs. 3-5) The letters of the word "GO" are formed by highly-particularized blocks. (*Id.*) By contrast, defendant's products use the word "glo" in all lower-case lettering, and its "g" is the shape of an "8" to reflect the product's 8 minute tooth whitening procedure. (*Id.* Exs. 11, 12**)** *See Medici Classic Prods.*, 683 F.Supp.2d at 311 (contrasting plaintiff's all upper-case use of word "Medici" with defendant's all lower-case use of same word). These differences between GoSMILE's products and the glo products create vastly different and dissimilar overall impressions. *Cf. Nabisco*, 220

F.3d at 47-48; *Medici Classic Prods.*, 683 F.Supp.2d at 311; *Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, No. 03 CV 2420(RMB), 2006 WL 1153354, at *7 (S.D.N.Y. May 1, 2006).

Because GoSMILE's marks and Defendants' marks are so obviously dissimilar facially as to overwhelm any possible likelihood of confusion, the second and third claims of the Complaint should be dismissed.[2]

### III

### GOSMILE'S STATE LAW CLAIMS IN COUNTS FOUR AND FIVE SHOULD BE DISMISSED

GoSmile alleges claims against Levine P.C. for unfair competition under New York law, based on Levine P.C.'s alleged trademark infringement, and for trademark infringement under New York law, specifically New York General Business Law § 360-k.

A claim for unfair competition under New York law based on a defendant's alleged use of marks that are confusingly similar to plaintiff's must be dismissed if there is no likelihood of confusion between the marks. *See Brockmeyer v. Hearst Corp.*, 248 F.Supp.2d 281, 300 (S.D.N.Y. 2003). As demonstrated above, there is no likelihood of confusion between GoSMILE's marks and Levine P.C.'s marks. The state law unfair competition claim should therefore be dismissed. *See Fifth Avenue of Long Island Realty Associates v. Caruso Management Co., Ltd.*, 718 F.Supp.2d 292, 314 (E.D.N.Y. 2010) ("Plaintiff's common law claim of unfair competition requires proof of the same elements as are required under a Lanham Act trademark and/or unfair competition claim. The court's dismissal of the Federal Lanham Act claims require dismissal of the parallel state law claim of unfair competition").

---

[2] Defendants note that plaintiff has also alleged that defendants intend to use the slogan "GLO SMILE WHITENING SYSTEM" for the GLO Light Device. Though this allegation has been demonstrated to be false as set forth in more detail in Defendants' memorandum of law in opposition to Plaintiff's preliminary injunction motion, defendants acknowledge that on a motion to dismiss, the plaintiff's allegations are treated at true. To the extent that the Court concludes that the alleged use of the mark "GLO SMILE WHITENING SYSTEM" would be likely to cause confusion, the Court may grant defendant's motion in part, as to all alleged marks other than the "GLO SMILE WHITENING SYSTEM."

12

Similarly, to state a claim under New York's trademark infringement and dilution statutes, N.Y. GBL §§ 360-k, 360-l, a plaintiff must allege that the marks are "substantially similar." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009); *Playtex Prods., Inc.*, 390 F.3d at 167 ("A plaintiff cannot prevail on a [New York] state or [pre-TDRA] federal dilution claim unless the marks at issue are 'very' or 'substantially similar.'"). As demonstrated above, the GoSMILE marks and defendant's marks are not substantially similar. Accordingly, GoSMILE's claim under New York's General Business Law should be dismissed.

IV

GOSMILE'S ANTI-CYBERSQUATTING CLAIM SHOULD BE DISMISSED

The eighth count of GoSMILE's complaint is against Dr. Levine for violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). This claim should be dismissed.

ACPA provides in pertinent part that a person is liable to a trademark owner if "that person (i) has a bad faith intent to profit from that mark ... and (ii) registers, traffics in, or uses a domain name that" is "identical or confusingly similar to" a distinctive or famous mark. 15 U.S.C. § 1125(d)(1). To state a claim under ACPA, a plaintiff must allege "that the defendant, in bad faith, registered, trafficked in, or used a domain name that is identical or confusingly similar to Plaintiff's distinctive mark." *E. Gluck Corp. v. Rothenhaus*, 585 F.Supp.2d 505, 519 (S.D.N.Y. 2008).

With respect to the "bad faith" element, the statute lists nine non-exclusive factors for a court to consider in determining whether a defendant has acted in bad faith:

> (I) the trademark or other intellectual property rights of the [defendant] in the domain name;

13

> (II) the extent to which the domain name consists of the legal name of the [defendant] or a name that is otherwise used to identify that person;
>
> (III) the [defendant's] prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the [defendant's] bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the [defendant's] intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the [defendant's] offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the [defendant's] prior conduct indicating a pattern of such conduct;
>
> (VII) the [defendant's] provision of material or misleading false contact information when applying for the registration of the domain name, the [defendant's] intentional failure to maintain accurate contact information, or the [defendant's] prior conduct indicating a pattern of such conduct;
>
> (VIII) the [defendant's] registration or acquisition of multiple domain names which the [defendant] knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names ..., without regard to the goods and services of the parties; and
>
> (IX) the extent to which the mark incorporated in the [defendant's] domain name registration is or is not distinctive and famous ...

15 U.S.C. § 1125(d)(1)(B)(i). In addition, ACPA contains a bad-faith "safe harbor" for a defendant who "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

14

1159512-1

"ACPA, including these useful criteria, should be read in view of the legislative purpose of the Act itself, which was to respond 'to concerns over the proliferation of cybersquatting-the Internet version of a land grab.'" *Lewittes v. Cohen*, No. 03 Civ. 189(CSH), 2004 WL 1171261, at *8 (S.D.N.Y. May 26, 2004) (quoting *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 267 (4th Cir. 2001)). "Specifically, the ACPA was designed to focus on individuals who 'register well-known brand names as Internet domain names in order to extract payment from the rightful owners of the marks, ... register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site, and target distinctive marks to defraud consumers, including to engage in counterfeiting activities.'" *Id.* (quoting *Lucas Nursery v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004)). "In short it is, as titled, a law designed to combat cybersquatting." *Id.*. "Prior knowledge does not necessarily give rise to an inference of bad faith because adoption of a trademark with actual knowledge of another's prior registration may be consistent with good faith." *Cline v. 1-888-PLUMBING Group, Inc.*, 146 F.Supp.2d 351, 372 (S.D.N.Y. 2001).

GoSMILE's claim under ACPA should be dismissed because it has not alleged facts to support a conclusion that Dr. Levine registered, trafficked in or used the website www.gosmileaesthetics.com in bad faith. GoSMILE alleges that Dr. Levine registered the website www.gosmileaesthetics.com in September 2005, while he was still affiliated with GoSMILE as an officer, director, shareholder, and spokesperson. (Complaint ¶¶ 13, 21) GoSMILE does not allege facts that state a plausible claim that Dr. Levine acted in bad faith when he registered www.gosmileaesthetics.com while still affiliated with the company he founded, GoSMILE. GoSMILE makes the conclusory allegation that Dr. Levine registered www.gosmileaesthetics.com in bad faith with an intent to profit from and trade upon the

15

goodwill and reputation of GoSMILE by drawing customers to his dental practice (Complaint ¶ 107). Yet GoSMILE also alleges that Dr. Levine was the "primary spokesman for the brand" (*Id*. ¶ 13) and invested significant monies to promote Dr. Levine to the public and to retailers as the dentist behind the GoSMILE brand." (*Id*. ¶ 14) Further, his "name and likeness were featured on virtually all of GoSMILE's products, packaging, promotional materials, press releases, marketing and training materials and retailer sales presentations." (*Id*.) In short, Dr. Levine's use of this site was consistent with the role GoSMILE avers he played and GoSMILE's allegation is not plausible in light of the allegation that Dr. Levine registered the website while he was an officer and director of GoSMILE.

Additionally, there are no allegations of the sort of conduct that ACPA was intended to combat. There is no allegation that Dr. Levine registered and used the website www.gosmileaesthetics.com in order to hold the site as ransom to blackmail or extort GoSMILE. To the contrary, GoSMILE alleges that Dr. Levine never approached GoSMILE about selling them the www.gosmileaesthetics.com website; rather, GoSMILE approached Dr. Levine, and Dr. Levine was willing to transfer the website without payment, as long as GoSMILE would grant him a release. (Complaint ¶¶ 23-24)

*Lewittes* is instructive. There, defendant's Rule 12(b)(6) motion to dismiss a claim under ACPA was granted where the website contained the defendant's last name, there was no allegation that the defendant sought to sell the website for financial gain, and there was no allegation that defendants "warehoused" multiple domain names for profit. The court concluded that "the allegations set forth in the Complaint do not even remotely suggest that defendants perpetrated the core activities that threaten to result in the 'paradigmatic harm that the ACPA was enacted to eradicate.'" *Lewittes*, 2004 WL 1171261, at *8 (quoting *Lucas Nursery*, 359 F.3d

16

at 840). Similarly here, the complaint alleges that Dr. Levine registered the www.gosmileaesthetics.com website while he was affiliated with GoSMILE, and there are no allegations that Dr. Levine sought to sell the website for financial gain, or that he registered multiple websites for profit. Accordingly, GoSMILE has not alleged sufficient facts to state a plausible claim that Dr. Levine registered or used the www.gosmileaesthetics.com website in bad faith, as is required to state a claim under ACPA. GoSMILE's claim should be dismissed.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing with prejudice Counts One, Two, Three, Four, Five, and Eight of the Complaint.

Dated: New York, New York
      January 4, 2011

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By: /s Kyle C. Bisceglie
    Kyle C. Bisceglie
    Howard J. Smith
    Joshua S. Androphy
    *Attorneys for Defendants*
    Park Avenue Tower
    65 East 55th Street
    New York, New York 10022
    (212) 451-2300

and

DAVIDOFF MALITO & HUTCHER LLP
David Warren Denenberg
Joshua S. Krakowsky
Michael A. Adler
*Attorneys for Defendant*
605 Third Avenue
34th Floor
New York, NY 10158
(646) 428-3256