Mark C. Zauderer
Jonathan D. Lupkin
FLEMMING ZULACK
  WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, NY 10006
Tel.:   (212) 412-9500
Fax:   (212) 964-9200
jlupkin@fzwz.com
mzauderer@fzwz.com

-and-

Wendi E. Sloane (*pro hac vice*)
Annaliese F. Fleming (*pro hac vice*)
Matthew F. Singer (*pro hac vice*)
BARACK FERRAZZANO
  KIRSCHBAUM & NAGELBERG LLP
200 W. Madison St.
Ste. 3900
Chicago, IL 60606
Tel.:   (312) 984-3100
Fax:   (312) 984-3150
wendi.sloane@bfkn.com
annaliese.fleming@bfkn.com
matthew.singer@bfkn.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GO SMiLE, INC., a Delaware corporation, | ) ) ) | **ECF CASE** |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 10 CIV 8663 (PKC) |
| DR. JONATHAN B. LEVINE, D.M.D. P.C., a New York Corporation; and DR. JONATHAN B. LEVINE, an individual; | ) ) ) ) ) | |
| Defendants. | ) | |

**GO SMILE, INC.'S RESPONSE TO DEFENDANTS' 12(B)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................3

FACTS ............................................................................................................................................4

ARGUMENT ..................................................................................................................................6

I.   LEGAL STANDARD ...........................................................................................................6

II.  GO SMILE HAS ADEQUATELY PLED LIKELIHOOD OF CONFUSION ...........................6

    A.  STRENGTH OF PLAINTIFF'S MARKS ...........................................................................9

    B.  SIMILARITY BETWEEN GO AND THE GLO-BASED TRADEMARKS ..........................9

        1.   SIGHT ...............................................................................................................10

        2.   SOUND .............................................................................................................11

        3.   MEANING .........................................................................................................12

    C.  COMPETITIVE PROXIMITY OF THE PRODUCTS ........................................................13

    D.  BRIDGING THE GAP .................................................................................................13

    E.  ACTUAL CONFUSION ...............................................................................................13

    F.  GOOD FAITH/INTENDED INFRINGEMENT ................................................................14

    G.  QUALITY OF THE PRODUCTS ..................................................................................15

    H.  SOPHISTICATION OF THE BUYERS ...........................................................................15

    I.  DR. LEVINE'S PRIOR ASSOCIATION WITH GO SMILE .............................................16

III. GO SMILE HAS SUFFICIENTLY PLED ITS ACPA CLAIM .................................................17

CONCLUSION .............................................................................................................................18

**PRELIMINARY STATEMENT**

Defendants seek, pursuant to Federal Rule of Civil Procedure 12(b)(6), the dismissal of Counts I-V and VIII of GO SMiLE's Complaint for failure to state claim (the "Motion"). Defendants do not seek dismissal of Counts VI and VII, against Dr. Jonathan B. Levine, in his individual capacity ("Dr. Levine") for trademark infringement and false designation of origin under the Lanham Act. GO SMiLE originally brought this lawsuit prior to the launch of products under the GLO-based Trademarks, necessitating Count I for declaratory judgment. Because Defendants have now launched products, Count I is moot and GO SMiLE voluntarily dismisses it.

At issue on this motion are the following claims: Counts II-V, against Dr. Jonathan B. Levine, DMD, P.C. (the "Dental Practice"), for trademark infringement and false designation of origin under the Lanham Act, as well as unfair competition and trademark infringement under New York law; and Count VIII, against Dr. Levine, for violation of the Anticybersquatting Act ("ACPA"), for his use of www.gosmileaesthetics.com.

Defendants argue for dismissal of Counts II-V because, they claim, the GO SMiLE Trademarks are so facially dissimilar to Defendants' GLO-based Trademarks that the dissimilarity precludes likelihood of confusion as a matter of law and mandates dismissal. Defendants argue for dismissal of Count VIII because, in their view, GO SMiLE has failed to sufficiently plead facts to support a cause of action under the ACPA. Contrary to Defendants' assertions, GO SMiLE has alleged facts in its Complaint sufficient to conclude the GLO-based Trademarks are confusingly similar to the GO SMiLE Trademarks, and to support a claim for violation of the ACPA by Dr. Levine.

The Motion ignores specific factual allegations, which must be taken as true on a motion to dismiss, that establish:

- GO SMiLE owns registrations for a family of strong GO-based Trademarks, which it uses to market its at-home teeth whitening and oral care products;

- Defendants are creating a family of GLO-based Trademarks to use in marketing directly competitive at-home teeth whitening and oral care products in the same marketing channels used by GO SMiLE;

- The GLO-based Trademarks are confusingly similar to GO SMiLE's Trademarks, which have already resulted in actual confusion; and

- Dr. Levine has used www.gosmileaesthetics.com to market his products under the GLO-based Trademarks to GO SMiLE's customers, but refuses to transfer the domain to GO SMiLE when requested, except in exchange for a full release of all claims.

## **FACTS**[1]

The Court is well-versed in the facts underlying this dispute, and GO SMiLE will not rehash them in their entirety, but simply provide a short recitation of the relevant factual allegations in the Complaint.

GO SMiLE owns a number of registrations and applications for, the good will associated therewith, and the common law rights in, a family of strong and distinctive "GO"-based trademarks for its tooth whitening and oral care products, including but not limited to the following trademarks: GO SMILE, GO SMILE (Stylized), GO (& Design-Full Smile Face Logo), GO WHITEN, GO TRAVEL, GOHEALTHY, GOSMILE, GOSMILE AM, GOSMILE AM/PM, GOSMILE PM, TOOTH WHTIENING ON THE GO, SMILE ON THE GO, ON THE GO, GOMAINTAIN, GOPROTECT, GO DISCOVER, GO ALL OUT, GO ON…SMILE!, GO

---

[1] GO SMiLE's Complaint was filed on November 16, 2010, and Defendants' Motion to Dismiss was filed on January 4, 2011. Since late December 2010 to the present, the parties have engaged in discovery to prepare for the preliminary injunction hearing. Through this discovery, GO SMiLE has had the opportunity to develop and uncover many of the facts surrounding its claims. Nevertheless, in the context of the Rule 12(b)(6) Motion to Dismiss, the parties and the court are limited to the facts as contained within the complaint and any attached documents.

DAILY, ON THE GO, WHITENING ON THE GO, GO WHITER, GO VENEER.  (Cmplt. at ¶ 17.)

The defendant Dental Practice owns registrations for several GLO-based Trademarks, including GLO, G.L.O. and GLO SCIENCE (*Id.* at ¶¶ 26-28.) Dr. Levine, in his individual capacity, owns the domain name gloscience.com.  (*Id.* at ¶ 29.)  He also owns www.gosmileaesthetics.com.  (*Id.* at ¶ 21.)

Defendants are using the GLO-based Trademarks to market and sell teeth whitening products to consumers for at-home use, in the same marketing channels of distribution though which GO SMiLE sells its directly competitive products.  (*Id.* at ¶¶ 30-37, 45.)  Defendants' choice of the GLO-based Trademarks for teeth whitening products, including the GLO Light Device, calls to mind and is intended to call to mind "GO."  (*Id.* at ¶ 47.)  In fact, Dr. Levine himself uses "GLO" in place of the word "GO" in his correspondence and marketing, as in "Let's Glo for it," "Get ready to GLO," and "Get GLOing."  *(Id.)*  The GLO-based Trademarks are confusingly similar to GO SMiLE's Trademarks. (*Id.* at ¶¶ 43-44, 48.)  Defendants were aware of GO SMiLE's Trademarks, and the fact that the consuming public recognizes them and relies upon them to identify the source of GO SMiLE's products, when they chose the GLO-based Trademarks.  (*Id.* at ¶ 40.)

The likelihood of confusion resulting from the use of the GLO-based Trademarks will be heightened because of Dr. Levine's past affiliation with GO SMiLE.  (*Id.* at ¶ 46.)  Not only is Dr. Levine a former founder of GO SMiLE whose name and likeness was once directly linked to GO SMiLE's products, Defendants continued to promote Dr. Levine as the founder of GO SMiLE, without explaining that he is no longer associated with GO SMiLE, long after he left GO SMiLE. *(Id.)*

There has already been actual confusion as to source by potential retailers and/or distributors as a result of the GLO-based Trademarks. (*Id.* at ¶ 38.) Several Sephora Store Directors have recently asked GO SMiLE employees about the imminent launch of the GLO Light Device, mistakenly believing the product was that of GO SMiLE. (*Id.*)

Dr. Levine also owns the domain name gosmileaesthetics.com, used an email address at that domain name to market the competing teeth-whitening products under the GLO-based Trademarks, including to GO SMiLE's existing customers, and has refused to transfer this domain name to GO SMiLE, except in exchange for full release of all claims against him. (*Id.* at ¶¶ 21-24.)

## ARGUMENT

I.  **LEGAL STANDARD.**

A court may grant a motion to dismiss under Rule 12(b)(6) "only if, drawing all reasonable inferences in favor of the plaintiff, the complaint fails to allege facts that would give rise to a plausible claim for relief." *Baidu, Inc. v. Register.com, Inc.*, 10 Civ. 444 (DC), 2010 U.S. Dist. Lexis 73905, at *11 (S.D.N.Y. July 22, 2010). The factual allegations must be specific enough to raise the right to relief above the speculative level, and so a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 555 U.S. 544, 553-56 (2007). But the factual allegations of claims will overcome a motion to dismiss as long as they are plausible. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "The plausibility standard is not akin to a 'probability requirement'" and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity." *Id.*

II.  **GO SMiLE HAS ADEQUATELY PLED LIKELIHOOD OF CONFUSION.**

Defendants argue that GO SMiLE has failed to state claims against the Dental Practice for trademark infringement, false designation of origin and unfair competition, because it cannot,

as a matter of law, demonstrate sufficient likelihood of confusion between the GO SMiLE Trademarks and the GLO-based Trademarks. Defendants premise this argument on their misguided belief that there is sufficient facial dissimilarity between GO SMiLE's Trademarks and the GLO-based Trademarks to conclude confusion is unlikely as a matter of law. Defendants do not argue against, and therefore concede, the adequacy of the facts pled in the Complaint establishing the other legal elements of the claims. Accordingly, the only issue on this Motion with respect to Counts II-V is whether GO SMiLE sufficiently alleged facts supporting a conclusion of likely confusion. Because GO SMiLE has done so, the Motion on Counts II-V should be denied.

In arguing that their GLO-based Trademarks are purportedly so dissimilar from GO SMiLE's Trademarks, Defendants urge the Court not to even consider the other seven *Polaroid* factors and simply dismiss the action. This contradicts well-established Second Circuit authority, however, which mandates, with good reason, that courts evaluate all eight *Polaroid* factors:

> [I]t is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why. The steady application of *Polaroid* is critical to the proper development of trademark law, for it is only when the *Polaroid* factors are applied consistently and clearly over time that the relevant distinctions between different factual configurations can emerge.

*Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 400 (2d Cir. 1995) (internal citations omitted).

In fact, the Second Circuit previously has admonished a district court that "[u]pon remand, [it] should keep in mind that '[n]o single factor is dispositive, nor is a court limited to consideration of only these factors.'" *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) (*citing Brennan's Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d

Cir. 2004)) (reversing a denial of a preliminary injunction where the district court erred in its analysis of similarity of the marks at issue).

Likelihood of confusion in this Circuit is established under the eight-factor test first announced in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d. Cir. 1961). Under this test, a court analyzes the following factors: (i) strength of the plaintiff's mark, (ii) similarity of plaintiff's and defendant's marks, (iii) competitive proximity of the products, (iv) likelihood that a plaintiff will "bridge the gap" and offer a product of the type that the defendant offers, (v) actual confusion, (vi) good faith on the defendant's part, (vii) quality of defendant's product, and (viii) sophistication of the buyers. *Id.*

Trademark infringement claims supported by plausible factual allegations must survive a motion to dismiss under 12(b)(6). *See, e.g., E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505 (S.D.N.Y. 2008). In *Gluck,* the court denied defendant's motion to dismiss and granted in part and denied in part defendant's motion for preliminary injunction by analyzing all the *Polaroid* factors. The court found plaintiff had adequately stated claims for trademark infringement by alleging facts that it owned protectable marks similar to that being used by defendant, and defendant's mark had been adopted intentionally, even though plaintiff did not allege any actual confusion. *Id.* at 518-19; *see also New York State Electric & Gas Corp. v. U.S. Gas & Electric, Inc.*, 697 F. Supp. 2d 415, 431-38 (W.D.N.Y. 2010) (analyzing all *Polaroid* factors and denying motion to dismiss trademark claims where complaint alleged that it owned protectable marks similar to that being used by defendant and the sophistication factor also weighed in plaintiff's favor).

"Moreover, the *Polaroid* test is a fact-intensive inquiry. Declaring one factor dispositive . . . is inappropriate at this early stage in the litigation. *SB Ice, LLP v. MGN, LLC*, No. 08 Civ.

3164 (DLC), 2008 U.S. Dist. LEXIS 84143, at *5-*8 (S.D.N.Y. October 20, 2008) (analyzing all *Polaroid* factors and denying a motion for judgment on the pleadings under the same standard as 12(b)(6) because plaintiff stated sufficient facts supporting its trademark infringement claims). Through the prism of this test, GO SMiLE has alleged sufficient facts to support its claims.

    A.    **S**TRENGTH OF **P**LAINTIFF'S **M**ARKS.

GO SMiLE has pled facts sufficient to establish the strength of its marks. Strength "refers to [a mark's] distinctiveness, that is to say, the mark's ability to identify goods sold under it as coming from one particular source." *MetLife, Inc. v. Metro. Nat'l Bank*, 388 F. Supp. 2d 223, 229 (S.D.N.Y. 2005). GO SMiLE has alleged a wide range of facts supporting and establishing the strength of its trademarks, including:

- GO SMiLE owns a number of registrations and applications for, the good will associated therewith, and the common law rights in, a family of strong and distinctive "GO"-based trademarks for its tooth whitening and oral care products, including but not limited to the following trademarks: GO SMILE, GO SMILE (Stylized), GO (& Design-Full Smile Face Logo), GO WHITEN, GO TRAVEL, GOHEALTHY, GOSMILE, GOSMILE AM, GOSMILE AM/PM, GOSMILE PM, TOOTH WHTIENING ON THE GO, SMILE ON THE GO, ON THE GO, GOMAINTAIN, GOPROTECT, GO DISCOVER, GO ALL OUT, GO ON…SMILE!, GO DAILY, ON THE GO, WHITENING ON THE GO, GO WHITER, GO VENEER. (*Id.* at ¶ 17.)

- GO SMiLE owns the common law trademark SMILE WHITENING SYSTEM, which it first used in commerce in December, 2008, in connection with its 7 and 10 day whitening kits. *(Id.)*

- GO SMiLE has actively and successfully protected and policed its GO SMiLE Trademarks in the past, including preventing other infringers from using not only GO SMiLE Trademarks but also GLO-based Trademarks for teeth whitening products and services. (*Id.* at ¶ 19.)

    B.    **S**IMILARITY **B**ETWEEN **GO** AND THE **GLO**-BASED **T**RADEMARKS.

GO SMiLE has also adequately pled the similarity of the GLO-based Trademarks to its trademarks by alleging facts that establish similarity in overall commercial impression under the sight, sound, and meaning test. In evaluating similarity of marks, courts must "analyze the

mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." *Louis Vuitton Malletier*, 454 F.3d at 117 (internal citations omitted). "For purposes of determining likelihood of confusion, trademark similarity is based on (i) visual impression, (ii) sound; or (iii) meaning or connotation." *Generation X Int'l Corp. v. No Excuses Sportswear, Ltd.*, No. 98 Civ. 1935, 1998 U.S. Dist. LEXIS 4693, at *20 (S.D.N.Y. April 3, 1998). Where, as here, goods are directly competitive, there is a lower threshold for determining similarity. *See Baniff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 492 (2d Cir. 1988) ("To establish likelihood of confusion, competing goods require less proof under the *Polaroid* factors than noncompetitive items."); *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 538 n.3 (2d Cir. 2005) ("Our 'similarity of the marks' test - especially when the comparison is between marks on identical product types . . . does not require an identity of marks.").

1. **Sight**.

GO SMiLE has alleged that "it owns a number of registrations and applications for, the good will associated therewith, and the common law rights in, a family of strong and distinctive "GO"-based trademarks for its tooth whitening and oral care products." (Cmplt. at ¶ 17.) Moreover, GO SMiLE has alleged that Defendants have applied to register numerous marks utilizing the word "GLO," including GLO, G.L.O., and GLO SCIENCE. (*Id.* at ¶¶ 26-28.)

The visual appearance of GLO-based Trademarks is similar to the GO SMiLE Trademarks. In particular, the "Go" and "Glo" components of the marks are separated merely by a single letter, both beginning with "G" and ending with "O." Overall, the nearly identical words "GO" and "GLO" will result in apparent "sight" similarity between the marks.

Further, GO SMiLE has alleged that Defendants have sought to register the GLO-based Trademarks as word marks, without any claim to a particular color, stylization, or design. (*Id.* at ¶¶ 26-28.). However, any differences in current packaging or design are of far less importance than if the marks at issue were design marks. *See In re RSI Sys. LLC*, 88 U.S.P.Q.2D (BNA) 1445, 1448 (T.T.A.B. 2008) ("Because the registrants' marks are displayed in typed form, the marks are not limited to any special stylization and we must assume that they could be displayed in the same style as the letters in applicant's mark.").

### 2. **Sound.**

The GO SMiLE Trademarks and the GLO-based Trademarks are even more similar in sound, as described below:

- GO and GLO are both one syllable words;
- They have the same stress pattern, with primary accent on the first letter "G";
- The words are each short, and have a primary sound of acoustically similar long vowels; and
- When spoken, the lilt and cadence of the two marks are virtually identical.

The only dissimilarity between the two marks is the inclusion of the letter "l" in "GLO," a difference that is *de minimis* and certainly insufficient to protect Defendants from a finding of confusing similarity. *See Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993) (affirming similarity of marks where the "sounds of both marks are extremely similar, differing only by one letter"). Indeed, this situation is reminiscent to *Black & Decker Corporation v. Emerson Electric Co.*, 84 U.S.P.Q.2d (BNA) 1482, *22 (TTAB 2007). In that case, the Board observed that the applicant's trademarks (\_\_\_\_ HAWG) followed the same pattern as the opposer's trademarks (\_\_\_\_ HOG), with the first component describing or suggesting a characteristic or function of the

product. The Board rejected the applicant's argument that the difference in the spelling of the suffix (HAWG versus HOG) distinguished its marks from the opposer's family.

### 3. Meaning.

In some respects there is even a similarity in meaning. Specifically, both the GO SMiLE Trademarks and the GLO-based Trademarks are simple and catchy declarative statements for teeth whitening products. As GO SMiLE has alleged, Dr. Levine himself uses "GLO" in place of the word "GO" in his correspondence and marketing:

- Let's Glo for it. (Cmplt. at ¶ 47.)

- Get ready to GLO. (*Id.*)

- Get GLOing. (*Id.*)

None of the cases cited by Defendants compel a different conclusion. Defendants rely heavily on *Energy Intelligence Group v. UBS Financial Services.*, No. 08 Civ. 1497, 2009 U.S. Dist. LEXIS 48495 (S.D.N.Y. May 22, 2009). But *Energy Intelligence Group* provides no support for Defendants argument that GO SMiLE's trademark claims should be dismissed without performing a *Polaroid* analysis because the marks are facially dissimilar. Rather, the court in *Energy Intelligence* granted the motion to dismiss because the mark being enforced in that case, THE OIL DAILY, was generic and not protectable. *Id.* at *15, *21-*22. Similarly, *Le Book Publishing, Inc. v. Black Book Photography*, 418 F. Supp. 2d 305, 311-12 (S.D.N.Y. 2005), cited by Defendants for the same proposition, is equally inapposite because it too involved a non-protectable generic term, book, as the only common element between the marks at issue, and which had been disclaimed from the plaintiff's trademark registration.

Neither is *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57 (2d Cir. 2010) instructive, which involved a copyright dispute, not a trademark dispute, and is irrelevant to this matter.

### C. COMPETITIVE PROXIMITY OF THE PRODUCTS.

"In considering the proximity of the products, a court examines the extent to which the products compete with one another, and how this competition may lead to consumer confusion." *MetLife*, 388 F. Supp. 2d at 232. "[T]he closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003). Here, GO SMiLE has alleged that the products are identical, and will be sold through the same channels, and indeed, the very same retailers. (Cmplt. at ¶¶ 12, 31, 35, 37, 45).

### D. BRIDGING THE GAP.

Since the products are in direct competition, this factor is not relevant. *See Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 620 (2d Cir. 2008); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 218 (2d Cir. 2003); *MetLife*, 388 F. Supp. 2d at 232 ("Because both parties now engage in [same service], I do not consider this factor.").

### E. ACTUAL CONFUSION.

"[E]vidence of actual confusion regarding affiliation or sponsorship is also entirely relevant to the ultimate likelihood-of-confusion inquiry." *The Morningside Group, Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 141 (2d Cir. 1999). Here, GO SMiLE has alleged that there has already been actual confusion as to source by potential retailers and/or distributors as a result of Levine P.C.'s selection of the GLO-based Trademarks for its at-home teeth whitening products to be sold directly to consumers. (Cmplt. at ¶ 38.) Several Sephora

Store Directors have recently asked GO SMiLE employees about the imminent launch of the GLO Light Device, mistakenly believing the product was that of GO SMiLE. *(Id.)*

   **F.**  **GOOD FAITH/INTENDED INFRINGEMENT.**

The inquiry is whether defendant "adopted its mark with the intention of capitalizing on [GO SMiLE's] reputation and goodwill and any confusion between his and the senior user's product." *Heisman Trophy Trust v. Smack Apparel Co.*, 637 F. Supp. 2d 146, 156 (S.D.N.Y. 2009). "Where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, the Second Circuit has upheld findings of bad faith." *MetLife*, 388 F. Supp. 2d at 234 (internal citations omitted). Here, GO SMiLE has alleged the following facts in support:

- Defendants are aware of the fact that the consuming public recognizes and relies upon the GO Trademarks to identify the source and origin of GO SMiLE's products and to distinguish GO SMiLE's products from the products of others. (Cmplt. at ¶ 40.)

- The Dental Practice intentionally adopted the GLO-based Trademarks for its products to be sold at retail directly to consumers, which are confusingly similar to the GO SMiLE Trademarks. (*Id.* at ¶ 42.)

- The Dental Practice's use of the confusingly-similar GLO-based Trademarks for products identical to those GO SMiLE sells to the public under its GO SMiLE Trademarks is likely to deceive and confuse the public into believing there is an affiliation or sponsorship between the products offered by GO SMiLE and Defendants. *(Id.)*

- The likelihood of confusion resulting from the use of the GLO-based Trademarks will be heightened because of Dr. Levine's past affiliation with GO SMiLE. (*Id.* at ¶ 46.) Not only is Dr. Levine a former founder of GO SMiLE whose name and likeness was once directly linked to GO SMiLE's products, Defendants have continued to promote Dr. Levine as the founder of GO SMiLE, without explaining that he is no longer associated with GO SMiLE. *(Id.)*

- The choice of the GLO-based Trademarks for teeth whitening products, including the GLO Light Device, calls to mind and is intended to call to mind "GO." (*Id.* at ¶ 47.) In fact, Dr. Levine himself uses "GLO" in place of the word "GO" in his

correspondence and marketing, as in "Let's Glo for it," "Get ready to GLO," and "Get GLOing." *(Id.)*

Defendants' use of the GLO-based Trademarks is a deliberate effort to capitalize on GO SMiLE's reputation and goodwill, and Dr. Levine's former association with GO SMiLE.

### G. QUALITY OF THE PRODUCTS.

GO SMiLE required discovery from Defendants before it could allege facts regarding the inferior quality of Defendants' products, so the Complaint does not contain such allegations.[2] At the time of filing, GO SMiLE was unable to purchase Defendants' products because they were not available at retail.

### H. SOPHISTICATION OF THE BUYERS.

"The sophistication factor recognizes that the likelihood of confusion between the products at issue depends in part on the sophistication of the relevant purchasers." *Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 480 (2d. Cir. 1996) (internal citations omitted). GO SMiLE pled that the products at issue in this matter are at-home teeth whitening products. (Cmplt. at ¶¶ 17, 20, 31.) At-home teeth whitening products are priced to be available to the at-home consumer, which is by definition a consumer who cannot afford, or does not wish to pay for, teeth whitening services at a cosmetic dental facility. At-home teeth whitening products are sold at relatively inexpensive price points, when one considers the cost of professional, in-office teeth whitening services. This fact supports a conclusion of likely confusion.

---

[2] Certain facts were unavailable to GO SMiLE at the time of filing. GO SMiLE has since conducted preliminary written discovery, and has discovered additional relevant facts. If the Court prefers that GO SMiLE amend the pleadings to contain this additional proof, it will do so.

## I. DR. LEVINE'S PRIOR ASSOCIATION WITH GO SMiLE.

Curiously, Defendants' Motion to Dismiss does not address allegations regarding Dr. Levine's prior affiliation with GO SMiLE, which GO SMiLE alleges will enhance likely confusion. GO SMiLE alleged numerous facts within its Complaint showing Dr. Levine's very public and long-lasting affiliation with GO SMiLE:

- Dr. Levine was the primary spokesperson for the GO SMiLE brand at retailer events and public appearances in the media. (Cmplt. at ¶ 13.)

- Dr. Levine's name and likeness were featured on virtually all of GO SMiLE's products, packaging, promotional materials, press releases, marketing and training materials and retailer sales presentations. (*Id.* at ¶ 14.)

- Dr. Levine and his wife, Stacey Levine, appeared in the media to market, promote and sell the GO SMiLE line of products. (*Id.*)

In addition, GO SMiLE alleged numerous facts within its Complaint showing that Dr. Levine has and continues to try and capitalize upon his affiliation with GO SMiLE:

- Dr. Levine continued to promote himself on his dental practice website as a co-founder of "the revolutionary smile beauty company GO SMiLE," without providing any disclaimer explaining he is no longer associated with the company. (*Id.* at ¶ 16.)

- Around September 27, 2005, while still involved with GO SMiLE, Dr. Levine registered the domain gosmileaesthetics.com, in his individual capacity, rather than in GO SMiLE's name. (*Id.* at ¶ 21.)

- Dr. Levine continued using the gosmileaesthetics.com domain name in connection with his website and his email address for at least a full year after leaving GO SMiLE, to market competing at-home teeth-whitening products under the GLO-based Trademarks, including to GO SMiLE's existing customers. (*Id.* at ¶ 22.)

All of these facts, which Defendants have conceded, increase the likelihood that consumers will be confused as to the source of at-home teeth whitening products associated with Dr. Levine. The impact of this association on consumers is an additional factor for this Court to

consider when determining the likelihood that consumers will be confused as to source because of Defendants' selection of the GLO-based Trademarks.[3]

### III. GO SMiLE HAS SUFFICIENTLY PLED ITS ACPA CLAIM.

In Count VIII of its Complaint, GO SMiLE alleges that Dr. Levine violated the ACPA through his use of the website www.gosmileaesthetics.com to market products bearing the GLO-based Trademarks. To state a claim under the ACPA, GO SMiLE must plead that Dr. Levine 1) has a bad faith intent to profit from the mark and (2) registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive or famous mark. 15 U.S.C. § 1125(d).

There is no dispute that GO SMiLE has adequately pled that Dr. Levine used a domain name, gosmileaesthetics.com, that is (a) identical or confusingly similar to GO SMiLE's distinctive mark. Gosmileaesthetics.com contains the name GO SMiLE, which is undeniably identical to several of GO SMiLE's Trademarks. GO SMiLE has also sufficiently alleged bad faith to state a plausible claim under the ACPA. Dr. Levine used an email address on the domain name gosmileaesthetics.com, after he was no longer affiliated with GO SMiLE, but having full knowledge of GO SMiLE's family of GO-based trademarks to send emails to businesses to market competing at-home teeth-whitening products under the GLO-based Trademarks, including to GO SMiLE's existing customers. (Cmplt. at ¶¶ 22-24.) He refused to transfer the domain name to GO SMiLE even when requested, except in exchange for a full release of all claims against him, including those pending against him relating to his non-compete violations and fraud. (*Id.*) These allegations are sufficient to conclude bad faith. *See E. Gluck Corp.*, 585 F. Supp. 2d at 520 (holding that bad faith was sufficiently alleged where plaintiff alleged "in its

---

[3] The Court is not limited to consideration of only the eight enumerated *Polaroid* factors, but may also consider other factors relevant to determining whether likelihood exists that consumers will be confused. *Louis Vuitton Malletier v. Dooney & Bourke*, 454 F.3d at 118.

Amended Complaint that Rothenhaus registered, maintains and operates the Domain Name in bad faith with knowledge of Gluck's protected mark and with the intent to divert costumers from Gluck")

Defendants completely ignore these allegations, and do not argue, that on the face of the pleadings, this allegation is insufficient to state a plausible claim for a violation of the ACPA. That concession requires survival of the claim, since Dr. Levine's use of the email address on gosmileaesthetics.com after leaving GO SMiLE evidences bad faith and an intent to profit from GO SMiLE's Trademarks.

Nor is *Lewittes v. Cohen*, No. 03 Civ. 189, 2004 WL 1171261 (S.D.N.Y. May 26, 2004), dispositive on this point as Defendants claim. Defendants are correct that in *Lewittes*, the court granted dismissal where the website in question "contained the defendants' last name, there was no allegation that the defendant sought to sell the website for financial gain, and there was no allegation that defendants 'warehoused' multiple domain names for profit." (*See* Defendants' Motion, at p.16.) But none of these facts are relevant to this matter. In this matter, the website in question, www.gosmileaesthetics.com, does not contain Dr. Levine's name. Further, allegations that an individual "sought to sell the website" or has "warehoused multiple domain names for profit," are not necessary to maintain a claim under the ACPA.

## **CONCLUSION**

Contrary to Defendants' assertions, GO SMiLE has pled facts sufficient to state causes of action under Counts II-V and VIII. Accordingly, the Court should deny Defendants' Motion to Dismiss as to those counts.

February 18, 2011				Respectfully Submitted,

						BARACK FERRAZZANO et al.

						By:	/s Annaliese F. Fleming_____

						Wendi E. Sloane (*pro hac vice*)
						Annaliese F. Fleming (*pro hac vice*)
						Matthew F. Singer (*pro hac vice*)
						BARACK FERRAZZANO
						  KIRSCHBAUM & NAGELBERG LLP
						200 W. Madison St.
						Ste. 3900
						Chicago, IL 60606
						Tel.:	(312) 984-3100
						Fax:	(312) 984-3150
						wendi.sloane@bfkn.com
						annaliese.fleming@bfkn.com
						matthew.singer@bfkn.com