# OLSHAN

OLSHAN   GRUNDMAN   FROME   ROSENZWEIG   &   WOLOSKY   LLP

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212.451.2207
EMAIL: KBISCEGLIE@OLSHANLAW.COM

February 18, 2011

BY FACSIMILE (212) 805-7949

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE Docketed 3-7-11
```

Hon. P. Kevin Castel
United States District Court Judge
500 Pearl Street
New York, NY 10007-1312

Re: GoSMILE, Inc. v. Dr. Jonathan B. Levine, D.M.D., P.C.
and Dr. Jonathan B. Levine, 10-CIV-8663 (PKC) (DCF)

Dear Judge Castel:

GoSMILE filed the complaint in this action on November 16, 2010, without a survey or any credible basis to support its allegations of trademark confusion between GoSMILE and the GLO or GLO Brilliant marks. Nonetheless, GoSMILE pressed on, filing a Motion for a Preliminary Injunction on December 20, 2010 - again without any credible basis to support its allegations of confusion. Incredibly, after all this time GoSMILE has still failed to obtain an expert survey supporting its allegation of confusion, and after three days of testimony and use of judicial resources, has failed to adduce any credible testimony demonstrating confusion between the relevant marks. Throughout the process GoSMILE has failed to show an emergency warranting the issuance of a preliminary injunction. GoSMILE has not met its burden under applicable law and, it seems, made no good faith effort to do so.

The question raised is why GoSMILE would go through the time and expense of prosecuting this action without securing evidence that would come even close to the heavy burden imposed on a plaintiff in seeking relief of this kind. The reason is simple: GoSMILE's real intention was not to protect itself from trademark confusion but to squelch competition from Dr. Levine, induce vendors to drop his new products, delay or abort his product launch, and bleed his infant company dry with legal fees and expenses before it sold its first product.

The testimony shows that this litigation is being financed and directed by GoSMILE's parent, JH Partners and its principal John Hansen. JH Partners is a private equity firm based in San Francisco with ownership of many brands including GoSMILE and hundreds of millions of dollars at its disposal, which is more than sufficient to hire an army of lawyers and fund numerous lawsuits aimed at squelching competition from Dr. Levine. This trademark litigation

1212424-2

NEW JERSEY OFFICE
744 BROAD STREET, 16TH FLOOR
NEWARK, NEW JERSEY 07102
TELEPHONE: 973.331.7200
FACSIMILE: 973.331.7222

February 18, 2011
Page 2

is the third lawsuit GoSMILE has commenced against Dr. Levine in the last three years, all aimed at putting him out of business. The Barack Ferrazano firm is prosecuting all of them and, in this action, insisted on expedited discovery and a preliminary injunction hearing for no legitimate purpose. The defense costs are massive and have been paid to date by Dr. Levine and his wife Stacey from personal funds or, in this trademark action, from the limited funds of their new company GLO Science, LLC.

GLO Science is being bled dry by this litigation, as are Dr. and Mrs. Levine. As GoSMILE is well aware, Dr. Levine is a dentist, a professor and an entrepreneur from Purchase, New York. GLO Science is a start-up company with a few investors. The Levines and GLO Science have limited financial capacity to fund litigation compared to Mr. Hansen and JH Partners. Many of the lawyers that attended the preliminary injunction hearing, such as Bruce Ressler and Ellen Werther, are long-time friends of the Levines who came to support Dr. Levine who is now in his third year of defending GoSMILE lawsuits.

GoSMILE filed this action with the intent to cripple GLO Science and perfectly timed its action to blow-up its launch. GoSMILE and/or its counsel knew all about the brand name GLO since at least December 2008 (when it obtained Defendant's Exhibit 152 stolen by two employees from Dr. Levine's practice), and openly referred to it in its state court complaint in July 2009 (see Jan. 16, 2011 transcript at 34-35). Per the testimony of Angela Brass, Ms. Faust, and emails in evidence, GoSMILE again heard about the GLO brand from unnamed people at Sephora in the spring and summer of 2010 (See Defendants Exs. 121-122, 126, 133). Yet, GoSMILE waited until November 16, 2010 to file this action.

Shortly after filing the complaint in this action, GoSMILE, its ad agency and its lawyers, pitched an "exclusive" story about this lawsuit to the New York Post. (See Plaintiffs' Ex. 157 at GOSMILE 0237009) This act of pushing the story of GoSMILE's lawsuit out to the press speaks volumes about GoSMILE's intentions and shows that the true motive of the suit was to injure Dr. Levine and GLO. It further undermines the argument that GoSMILE had any true concerns about "confusion" between the two marks as the article it pitched associates GoSMILE and GLO. In other words, by inciting the New York Post to run a story on Dr. Levine and the two companies and their respective trademarks, GoSMILE encouraged potential association by the public of GLO and GoSMILE.

This lawsuit should not have filed without a survey or concrete evidence of confusion. Tellingly, GoSMILE failed to produce such a survey despite the Court's stated interest in seeing one. Indeed, at the December 16, 2010 scheduling conference, the Court admonished counsel that this lawsuit should have been filed for a proper purpose, stated a "sense" that it may not have been, expressed a keen interest in seeing survey evidence from Plaintiff and ordered a date by which the parties should complete and submit expert reports. When asked by the Court whether Plaintiff had retained an expert or conducted a survey, Plaintiff's counsel represented they were in the process of "making calls" to line-up an expert. Defendants' survey expert, Mr. Poret later testified on February 17th that he believed he may have received one of those calls but that he already had a conflict representing GLO. The representation by GoSMILE's counsel it was seeking an expert, Mr. Poret's testimony on this point, and GoSMILE's failure to submit any survey evidence support an inference that GoSMILE was unable to find any expert to support its

1212424-2

position in this case. Given the support GoSMILE receives from its corporate parent, testified to by Ms. Faust, it was not lack of money that prevented GoSMILE from retaining an expert. GoSMILE knew or should have known its lawsuit was unsustainable when it could find no expert to back its position. Although Defendants bear no burden of proof and although Olshan was not retained until December 16 and had made no efforts to retain a survey prior to the December 16th conference, Defendants were nonetheless able to retain an expert who completed his survey and report by January 4, 2011.

Instead of conducting a survey or preparing an expert report, and not content with giving an exclusive about this lawsuit to the New York Post, GoSMILE then had its ad agency issue a press release about this case on the national news wire. The ad agency's notes reflect that the Barack Ferrazano firm drafted and revised the release which suggests public disparagement of Dr. Levine was a part of GoSMILE's legal and business strategy. The ad agency noted the story was, as part of the news cycle, picked up by the national newswires. (*See* Plaintiff's Ex. 167 at GOSMILE 0237009-10.)

These news reports were intended to and did in fact cause Dr. Levine to lose his already scheduled launch with QVC. While Dr. Levine was able to salvage a later launch with HSN, it was only because of his substantial and tireless effort and good relationship with HSN. At the same time, Dr. Levine began incurring hundreds of thousands of dollars in legal expenses to prepare a survey, respond to expedited discovery and prepare papers to respond to GoSMILE's motion for a preliminary injunction. All of this distracted from GLO Science's efforts to launch its fledgling business.

In this action, GoSMILE demanded and received extensive expedited discovery including full-scale production of electronically stored information. GoSMILE also received the right to depose Dr. Levine, Mrs. Levine and Hal Poret although it canceled the depositions after the witnesses had been prepped. GLO needed nearly a dozen lawyers to comply with GoSMILE's discovery and briefing schedule, much of which was accomplished during the Christmas holiday. Despite the extensive discovery available to it, GoSMILE was unable to uncover or identify any "evidence" of actual confusion. Instead, GoSMILE cited to double or triple hearsay where its employees make a vague claim of "confusion," but not any trademark confusion. For example, Angela Brass testified employees at Sephora were excited about "Dr. Levine's light" in July or August of 2010 even though they did not tell her the light would be marketed under the GLO or GLO Brilliant name. When the Court asked Ms. Brass how she knew the Sephora employees were referring to a light device made by Dr. Levine, she stated that she "just assumed" they were referring to Dr. Levine. Ms. Brass' emails in evidence (e.g., Defendants' Exs. 133, 134, 138, 142) also make clear that the only "confusion" was because these Sephora employees still thought Dr. Levine was with GoSMILE because of his former public association with GoSMILE. Similarly, Ms. Faust's testimony about supposed "actual confusion," largely as told to her on February 14, 2011 by her new employee (on her first day on the job), is even more tangential. Simply put, GoSMILE has put forward no testamentary or documentary evidence of trademark confusion and no evidence that "GLO" or "GLO Brilliant" are confusing similar with any GoSMILE mark.

1212424-2

Defendants, on the other hand, submitted the expert report of Hal Poret, a survey expert with an extensive background in conducting surveys involving perception of trademarks and trademark disputes. Mr. Poret's *Eveready* survey showed not a single person out of 100 respondents associated the GLO or GLO Brilliant mark with GoSMILE. Mr. Poret's Sequential Lineup survey likewise showed zero net confusion. As GoSMILE's counsel must know as an experienced trademark lawyer, it is unusual for survey experts to do both types of survey because it could lead to inconsistent results. Here, there is no inconsistency or doubt. Mr. Poret's report was provided to GoSMILE's counsel on January 4th. After Defendants produced their survey and completed expedited discovery, GoSMILE should have acknowledged it had no case and withdrawn its motion (counsel for Defendants demanded GoSMILE dismiss its lawsuit and motion on December 21, 2010 after receipt of Plaintiff's motion papers). Instead, GoSMILE forged full-steam ahead with its hearing and put on its lead witness, Ms. Faust.

When GoSMILE moved for a TRO on January 28, 2011, after Ms. Faust had already testified, the Court denied its application, and noted that "plaintiff has not yet shown a likelihood of success on the merits." (Docket No. 61) Surely, by putting on its CEO (a witness GoSMILE would put on twice), GoSMILE had already put in its "best" evidence at that point. Such written order was additional objective caution to GoSMILE that its claims lacked merit.

Without a survey or any evidence of confusion, facing two surveys diametrically opposed to its position and in receipt of an order already denying the relief it was seeking after one day of hearing, GoSMILE pressed forward with two more days of hearing time with this Court during which GoSMILE's counsel granularly examined witnesses endlessly grasping at anything that might remotely support its case. Even when advised by the Court on day three of the hearing that Plaintiff had a time limit of two hours for the remainder of the hearing, Plaintiff's counsel spent the bulk of that time ineffectively attempting to cast doubt on the conclusions of Mr. Poret rather than putting on evidence of any confusion between the parties' trademarks.

Dr. Levine testified as to the genesis of the GLO and GLO Brilliant names and that his personal teeth whitening device was in use in his dental practice for years before GoSMILE launched its dated "handheld" type device in late 2010. Dr. Levine's testimony demonstrated that GLO is an acronym for his patent pending Guided Light Optics technology, that the name was chosen because it evokes the glowing feeling one gets from a smile and how his revolutionary patent pending closed system mouthpiece, in fact, glows when turned on.

GLO's packaging for HSN, which uses a "blue gradient fade" is in evidence at Defendants' Exhibits 241 and 242. Likewise, GLO's retail packaging, using white and iridium foil are available at Defendants' Exhibits 253, 265, and 269. Defendants submit that even a facial comparison to GoSMILE's packaging, Defendants' Exhibits 109-A to 109-I and Plaintiff's Exhibits 261-A to 261-D, demonstrates that these marks are not confusing similar. This conclusion is confirmed by Mr. Poret's survey showing zero confusion under both the *Eveready* and Sequential Lineup methods.

Lacking any facts to support its case, GoSMILE simply pointed to widely dissimilar case law. For example, *McDonald's Corp. v. McBagel, Inc.*, 649 F.Supp. 1268 (S.D.N.Y. 1986), often cited by GoSMILE to support its case, involved McDonald's, at the time of the case the

1212424-2

February 18, 2011
Page 5

nation's largest advertiser of any single good, and which had a universally recognized family of marks of food items using the prefix "Mc" or Mac" with a generic food item. The record shows McDonald's had been building its brand for 30 years and put over one hundred advertising storyboards into evidence. The defendant used the identical "Mc" prefix with a generic food item. McDonald's also offered into evidence a survey that showed a large percentage of respondents believed McBagel's was affiliated with McDonald's. GoSMILE's marks are not remotely comparable to McDonald's, in terms of recognition or consistency of use, and defendants are not using the "Go" mark that GoSMILE claims is the dominant feature of its purported family of marks. This case raises the issue whether McDonald's in 1958 would have a facially valid claim for a "family of trademarks" against Moc's Café, O'Donnell's Pub or McCasey's Bar where McDonald's also did not perform a survey, or submit any storyboards. Obviously, it would not. Nor does GoSMILE. Equally inapplicable is *Black & Decker Corp. v. Emerson Electric Co.*, 84 U.S.P.Q.2d (BNA) 1482, *22 (TTAB 2007), involving marks ending in "HOG" and "HAWG," which, unlike "Go" and "Glo," are different spellings of the same word, with the same meaning. Equally inapplicable is *Black & Decker Corp. v. Emerson Electric Co.*, 84 U.S.P.Q.2d (BNA) 1482, *22 (TTAB 2007), involving marks ending in "HOG" and "HAWG," which, unlike "Go" and "GLO," are different spellings of the same word, with the same meaning.

In sum, this lawsuit and this motion were not filed because of legitimate concerns over trademark confusion. They were filed because GoSMILE heard from multiple sources about Dr. Levine's new inventions that would revolutionize the field. Recognizing it would be unable to compete, GoSMILE sought to stop Dr. Levine's product from coming to market and to harm his new company and superior technology. It is clear why. The evidence at the hearing showed that, with its new innovative products, GLO's products generated approximately 15% of GoSMILE's gross annual revenue for 2010 in just one day on HSN.

Defendants submit that the evidence at the hearing, the facts and the law are clear, and that GoSMILE's motion for a preliminary injunction should be denied.

Respectfully submitted,

Kyle C. Bisceglie

cc: Joshua S. Androphy, Esq.
Howard J. Smith, Esq.
Annaliese Flynn Fleming, Esq.
David Warren Denenberg, Esq.
Jonathan Daniel Lupkin, Esq.
Joshua S. Krakowsky, Esq.

1212424-2

February 18, 2011
Page 6

    Kimberly Ailisa Pallen, Esq.
    Mark Carl Zauderer, Esq.
    Michael A. Adler, Esq.
    Wendi Elizabeth Sloane, Esq.
    *Via Email*

1212424-2

# OLSHAN
OLSHAN  GRUNDMAN  FROME  ROSENZWEIG  &  WOLOSKY  LLP

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222
WWW.OLSHANLAW.COM

## FACSIMILE COVER PAGE

| | | | |
|---|---|---|---|
| **DATE:** | February 18, 2011 | **PAGE** 1 OF 7 | |
| **FROM:** | Kyle C. Bisceglie, Esq. | **EMAIL:** | Kbisceglie@olshanlaw.com |
| **CLIENT/MATTER #:** | 07810-004 | **PHONE:** | 212-451-2207 |
| **RECIPIENT:** | Hon. P. Kevin Castel | **COMPANY:** | |
| **FACSIMILE:** | 212-805-7949 | **PHONE:** | |

If you do not receive all pages, please call: 212-451-2329

Re: *GoSMILE, Inc. v. Dr. Jonathan B. Levine, D.M.D., P.C., et al.,*
C.A. No. 10 Civ. 8663 (PKC) (DCF)

Please see the attached correspondence.

**CONFIDENTIALITY NOTE**

The documents accompanying this telecopy transmission contain information from the law firm of Olshan Grundman Frome Rosenzweig & Wolosky LLP which is confidential, legally privileged and exempt from disclosure under applicable law. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited, and that the documents should be returned to this firm immediately. In this regard, if you have received this telecopy in error, please notify us immediately by telephone so that we can arrange for the return of the original documents to us at no cost to you. Thank you.

ORIGINAL WILL BE SENT VIA: _____ Mail    _____ Federal Express    _____ Messenger
ORIGINAL WILL NOT BE SENT: XXX

1174976-1