UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GO SMILE, INC., a Delaware Corporation,

                        Plaintiff,

        -against-

DR. JONATHAN B. LEVINE, D.M.D. P.C., a
New York corporation, and DR. JONATHAN B.
LEVINE, an individual, GLO SCIENCE, LLC, a
Delaware Limited Liability Company, and JBL
RADICAL INNOVATIONS, LLC,

                        Defendants.

Index No. 10 CV 8663 (PKC)(DCF)

---

**DEFENDANTS' MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS UNDER RULE 41(a)(2) OF THE FEDERAL RULES OF CIVIL
PROCEDURE AND IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Defendants*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

1430392-1

Table of Contents

Page

Preliminary Statement..................................................................................................1

Statement of Facts.......................................................................................................2

    The Parties ............................................................................................................2

    The History of GoSMILE and Dr. Levine ............................................................3

    This Action............................................................................................................4

    Procedural History of this Action After the Preliminary Injunction Motion.......5

Argument ....................................................................................................................5

    I    THE ACTION SHOULD BE DISMISSED WITH PREJUDICE.............................5

        A.    GoSMILE Was Not Diligent in Bringing This Motion and Forced Defendants to Needlessly Expend Substantial Effort and Expense in Preparation for Trial.................................................................................6

        B.    GoSMILE's Claim That It Needs a Dismissal Without Prejudice to Protect Its Marks Is Meritless .......................................................................9

        C.    GoSMILE'S Conduct Has Been Unduly Vexatious...................................9

    II    DEFENDANTS SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS ........................................................................................................9

        A.    Before Moving for a Preliminary Injunction, GoSMILE Knew that Defendants Would Not Use a Mark or Slogan with the Term "GLO SMILE".................................................................................................13

        B.    GoSMILE Prosecuted this Action Knowing it Could Not Satisfy Necessary Elements of its Claim ..............................................................14

        C.    GoSMILE Continued to Maintain this Action After it Became Clear it Had No Chance to Succeed..........................................................15

        D.    GoSMILE Attempted to Manufacture Evidence During the Pendency of its Preliminary Injunction Hearing.......................................17

        E.    GoSMILE Engaged in Costly and Wide-Ranging Discovery After the Preliminary Injunction Motion was Denied.........................................19

i

F.    GoSMILE Delayed Communicating to Defendants About
Dismissal of the Action Until Days Before Scheduled Depositions
of Plaintiff and Defendants .......................................................................20

G.    The Action has Substantial Overtones of a Competitive Ploy..................22

H.    GoSMILE's Belated Concession that its Claim Lacks Merit and its
Motion to Voluntarily Dismiss the Action Does Not Preclude an
Award of Attorneys' Fees.........................................................................25

Conclusion .........................................................................................................................25

Defendants Dr. Jonathan B. Levine D.M.D. P.C. ("Levine P.C."),  Dr. Jonathan B. Levine ("Dr. Levine"), GLO Science, LLC ("GLO Science,") and JBL Radical Innovations, LLC (collectively "Defendants"), by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, submit this memorandum of law in partial opposition to Plaintiff's motion to dismiss pursuant to Rule 41(a)(2) and in support of Defendants' motion for attorneys' fees and costs.

<u>Preliminary Statement</u>

GoSMILE filed this so-called trademark action and moved for a temporary restraining order and a preliminary injunction without basis in law or fact in an effort to scuttle a product launch by its competitor, GLO Science, whose principal Dr. Levine was its co-founder.  With litigation already pending against Dr. Levine in New York state court, GoSMILE filed this action and opened another courtroom battlefield as part of its ongoing legal campaign against Dr. Levine.  GoSMILE demanded expedited discovery and a plenary hearing on its motion for a preliminary injunction.  It repeatedly asked the Court to enjoin Defendants from selling their products even though it conducted no consumer survey, offered no expert opinion and produced no viable evidence of consumer confusion.  Although the Court rejected Plaintiff's motion for a preliminary injunction, the pendency of GoSMILE's litigation combined with GoSMILE's press release and communications with the New York Post successfully scuttled Defendants' originally scheduled product launch on a major televised home shopping network on January 21, 2011.  The litigation also imposed punishing legal fees and costs on a nascent company which had yet to sell a single product or earn a single dollar.

GoSMILE now claims that after losing its preliminary injunction motion it "focused" its post-preliminary injunction discovery on the issue of consumer confusion (Docket No. 94, ¶ 9) and sought to minimize litigation costs to both parties.  This rhetoric is not supported by

GoSMILE's actions.  After the preliminary injunction hearing was concluded, GoSMILE served extensive party and non-party discovery which required Defendants to review hundreds of thousands of pages of documents and to prepare for depositions, which GoSMILE cancelled at the eleventh hour without any prior warning just days before the deposition of its CEO and corporate representative and the deadline for the conclusion of fact discovery.

Plaintiff dragged this litigation out to the end and the timing of its decision to terminate its case at the conclusion of discovery inflicted significant costs and expenses on Defendants. The totality of the circumstances here demonstrates GoSMILE's bad faith in bringing and in continuing this action.  Its claims have always lacked merit, and this action is part of a pattern of one company using the legal process to damage the business of a competitor.  Accordingly, GoSMILE's claims in this action should be dismissed with prejudice and Defendants' motion for their attorneys' fees should be granted.

### Statement of Facts

#### The Parties

GoSMILE develops and markets teeth whitening and oral-care products for home use, and sells them to consumers through retailers and QVC, a cable shopping network. (Docket No. 76, at 2)

Dr. Levine is a New York City aesthetic dentist and prosthodontist who co-founded GoSMILE, along with his wife Stacey Levine, in 2002.  (Docket No. 67, ¶ 2)  Defendant Jonathan B. Levine D.M.D. P.C. is a professional corporation with a place of business in New York and is Dr. Levine's dental practice.  (*Id.*, ¶ 1)

GLO Science is a start-up company which markets and sells the GLO Brilliant Personal Teeth Whitening Device, along with the GLO Brilliant Mouthpiece and Case and GLO Brilliant Whitening Gels (G-Vials).  GLO Science launched the sale of these products through HSN on

February 1, 2011, after its originally planned launch with QVC was scrapped when it learned of this litigation.  (Feb. 17, 2011 Transcript, Bisceglie Dec. Ex, B, pp. 205-08)  GLO Science's products are now sold at Sephora, and online at HSN, Sephora, and Glo Science's websites.  (Bisceglie Dec. ¶ 15)

The History of GoSMILE and Dr. Levine

In 2003, Dr. Levine sold a majority interest in GoSMILE to outside investors.  (Docket No. 35, ¶ 4; Docket No. 76, p. 2)   Dr. Levine remained involved with GoSMILE as a shareholder, officer and director until July 2007 when the outside investors, led by California-based private equity investor, John C. Hansen, forced him out.  (Docket No. 35, ¶¶ 4, 6; Docket No. 76, p. 2) Hansen, through his affiliates, continues to control GoSMILE today.  (Feb. 17, 2011 Transcript, Bisceglie Dec. Ex. B,  p. 248)

The Hansen-led ouster of the Levines led to a state court lawsuit over control of GoSMILE, Hansen's self-dealing and misuse of corporate funds, monies owed, ownership of GoSMILE's intellectual property, and Dr. Levine's ability to compete with GoSMILE.  (Docket No. 35, ¶ 7)  That matter was resolved by a Settlement Agreement, dated April 21, 2008 (the "Settlement Agreement").  (*Id*.)  The Settlement Agreement contained complete, mutual releases and provided that Dr. Levine was free to develop new innovations within his dental practice but could not actively compete with GoSMILE until July 10, 2009, which date had long since passed when GoSMILE commenced this action and sought a preliminary injunction.  (*Id*.)

In January 2009, GoSMILE commenced an action in the Southern District that was dismissed by Judge Kaplan, *GoSMILE Inc. v. Levine, et al.*, 09 Civ. 840 (S.D.N.Y.) (LAK) on procedural grounds.  (Docket No. 33, ¶ 2)

In April 2009, GoSMILE commenced another lawsuit against Dr. Levine in New York County Supreme Court, *GoSMILE, Inc. v. Jonathan B. Levine, D.D.S., et al.*, Index No

3

601148/2009 (Sup. Ct. N.Y. Co.) (the "State Court Action") alleging, among other things, that Dr. Levine was in breach of certain non-compete provisions in the Settlement Agreement and that GoSMILE is entitled to rescission of the Settlement Agreement.  (*Id.,* ¶ 3)  That action remains ongoing and is pending before Justice Ramos.

<u>This Action</u>

GoSMILE filed its Complaint on November 16, 2010 (Docket No. 1).  On December 10, the Court directed Defendants to identify the launch dates of products and services which Plaintiff alleges to infringe its mark when used with the "GLO Trademark" as defined in the Complaint.  (Docket No. 19)  At that time, Defendants planned to roll out their new products on QVC, a televised home shopping network, on January 21, 2011 and at Sephora beginning in March 2011.  (Bisceglie Dec. Ex. F)  The specific trademarks identified by Defendants in response to the Court-ordered interrogatory were: 1) GLO ǀ Brilliant Personal Teeth Whitening Device, 2) GLO ǀ Brilliant Whitening Gels, and 3) GLO ǀ Brilliant Mouthpiece and Case.  (*Id.*)

GoSMILE moved on December 21, 2010 for a preliminary injunction.  (Docket No. 28) While that motion was pending, Plaintiff filed an application for a Temporary Restraining Order ("TRO") which was denied by the Court.  (Docket No. 61)  The Court held evidentiary hearings on GoSMILE's motion on January 20, February 16, and February 17, 2011.  (Docket No. 76, at 1).

By Memorandum and Order dated March 7, 2011, the Court denied GoSMILE's motion for a preliminary injunction.  (*Id.*)  The Court found "that Go SMiLE has failed to establish a likelihood of success in proving that a consumer would confuse the marks of Go SMiLE with those used by the defendants."  (*Id.*, pp. 1-2)  Among other things, the Court found that GoSMILE's and Defendants' marks were not similar (*id.*, pp. 10-14), that Defendants' survey expert's conclusion that there was no likelihood of consumer confusion was reliable (*id.*, pp. 15-

1430392-1

21), and GoSMILE's purported evidence of confusion "was weak and of slight probative value." (*Id.*, p. 21)

<u>Procedural History of this Action After the Preliminary Injunction Motion</u>

On April 5, 2011, GoSMILE appealed the Court's Memorandum and Order.  (Docket No. 79).  On April 8, 2011, the Court held a scheduling conference, set August 5, 2011 as the deadline for completion of all fact discovery, and scheduled a Case Management Conference for September 16, 2011.  (Docket No. 81)  The deadline for fact discovery was ultimately extended to September 15, 2011 and the deadline for expert discovery was extended until October 14, 2011.  (Docket No. 92)  On May 17, 2011, GoSMILE filed an amended complaint.  (Docket No. 87)  On June 20, 2011, GoSMILE withdrew its appeal of the Order.  (Docket No. 90)

As will be discussed more fully below, on September 6, 2011, three days before the once-adjourned scheduled deposition of GoSMILE's 30(b)(6) designee and CEO and nine days before the close of discovery, GoSMILE communicated to Defendants for the first time a willingness to dismiss its case, provided, however, that such dismissal be without prejudice.

<u>Argument</u>

I

<u>THE ACTION SHOULD BE DISMISSED WITH PREJUDICE</u>

GoSMILE's motion to voluntarily dismiss the action pursuant to Fed. R. Civ. P. 41(a)(2) should be granted in part, with the action dismissed *with prejudice* in its entirety.  Defendants welcome GoSMILE's belated recognition that its claims are without merit and cannot be maintained.  Yet, GoSMILE has known its claims were without merit from the outset, has had ample time to litigate its case and its claims should be dismissed with prejudice.

Fed. R .Civ. P. 41(a)(2) provides that in granting a plaintiff's motion for voluntary dismissal the district court may impose "such terms and conditions as the court deems proper."

1430392-1

Therefore, "a district judge may convert a dismissal sought to be entered without prejudice to one with prejudice." *Gravatt v. Columbia University*, 845 F.2d 54, 56 (2d Cir. 1988). Additionally, the Second Circuit states the following standard for voluntary dismissal:

> Voluntary dismissal without prejudice is thus not a matter of right. Factors relevant to the consideration of a motion to dismiss without prejudice include the plaintiff's diligence in bringing the motion; any "undue vexatiousness" on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss. *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir. 1990) (denial of 41(a)(2) motion affirmed because of duration of action, extensive discovery, and nearness of trial).

In this case, all of the factors set forth in the Second Circuit's decision in *Zagano* weigh in favor of a dismissal *with* prejudice.

A.     GoSMILE Was Not Diligent in Bringing This Motion and Forced Defendants to Needlessly Expend Substantial Effort and Expense in Preparation for Trial

GoSMILE was not diligent in bringing this motion. GoSMILE litigated this case at full speed for ten months before seeking to voluntarily dismiss the action on the eve of the deadline for the completion of discovery. In addition, "the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial" also weigh heavily in favor of a dismissal with prejudice here. In this case, there were two rounds of extensive and expensive document discovery, requiring review of hundreds of thousands of documents. During the first stage, the Court held three days of an evidentiary hearing on GoSMILE's motion for a preliminary injunction. In addition to substantial attorneys' fees, Defendants incurred considerable litigation costs related to electronic discovery and multiple consumer surveys conducted by Defendants' expert Hal Poret. (Bisceglie Dec., ¶¶ 4-6, 14)

Further, GoSMILE's claim that it could not dismiss the action "until" it concluded that Defendants were not using the term "GLO SMILE" as a trademark or slogan is contradicted by

documentary evidence showing that Defendants never used such term in trade.  GoSMILE claims it did not know until after fact discovery that Defendants' would not use such a mark. (Docket No. 94, ¶ 10)  The <u>only</u> basis GoSMILE ever had for claiming that Defendants intended to use the term "GLO SMILE" was that the phrase briefly appeared on the Dental Practice's website.  However, on at least five occasions prior to May 17, 2011, GoSMILE had reason to know that Defendants were not using this name.

First, GoSMILE acknowledged in its motion for a preliminary injunction that term was removed from the Dental Practice's website after the filing of the lawsuit.[1]  (Docket No. 29-2, ¶ 12)  Second, that Defendants were not using a "GLO SMILE" mark was established in Defendants' response to the Court-ordered interrogatory, served December 14, 2010, which identified the trademarks Defendants would use in connection with its products: 1) GLO ׀ Brilliant Personal Teeth Whitening Device, 2) GLO ׀ Brilliant Whitening Gels, and 3) GLO ׀ Brilliant Mouthpiece and Case.  (Bisceglie Dec. Ex. F)  Third, that Defendants do not use the name "GLO SMILE" was further established by testimony at the preliminary injunction hearing and by Defendants' actual products and packaging themselves, all of which were available to GoSMILE in advance of the hearing and which were featured prominently at the hearing. Further, the Court explicitly held in the Order that "defendants do not market a product called 'Glo Smile.[2]'"  (Docket No. 76, p. 13)

---

[1]	GoSMILE claimed in its preliminary injunction motion papers that, as of December 10, 2010, Dr. Levine's website continued to use the phrase GLO SMILE WHITENING SYSTEM.  (Docket No. 29-2, ¶ 18)  However, the image of the website GoSMILE attached as an exhibit did not contain that phrase.  Rather, it used the name GLO ׀ Professional Smile Whitening System.  (*Id.*, Ex. 19)
[2]	Defendants' interrogatory answer, provided under penalty of perjury, the products and packaging produced to GoSMILE during expedited discovery and the evidence at the preliminary injunction hearing all provided ample notice to GoSMILE of Defendants' product name, but the Court's finding should have put the issue to rest.  At the latest, GoSMILE should have sought to dismiss its case as of the Court's March 7, 2011 finding.

1430392-1

Finally, GoSMILE expressly admitted that "Levine P.C. discontinued the use of the slogan GLO SMILE WHITENING SYSTEM after GO SMILE filed this lawsuit"[3] when it filed its Amended Complaint on May 17, 2011  (Docket No. 87, at ¶ 34)  Thus, GoSMILE's claim that it needed to maintain this action until it could learn in fact discovery that "Defendants changed their name and packaging of their products from GLO SMILE WHITENING SYSTEM to the GLO BRILLIANT PERSONAL TEETH WHITENING DEVICE," (Docket No. 94, at ¶ 10) is specious and completely disregards five different reasons GoSMILE knew Defendants never used the name.

In addition, GoSMILE knew that Defendants' products did not materially change in any way after Defendants' launch or after the preliminary injunction hearing.  This fact was confirmed by Defendants' actual products, readily available for sale at Sephora or HSN, and by Defendants' answer, dated June 24, 2011, to Interrogatory Number 4 of Plaintiff's Second Set of Interrogatories.  Specifically, GoSMILE asked that Defendants identify any modifications to their product "including its design, technical functioning, and/or packaging that have been undertaken subsequent to the date of the device's launch… ."  (Bisceglie Dec., Ex L, p. 5.)  None of the changes, such as inclusion of a "travel bag," the addition of a "tamper evident seal" and the addition of an insert concerning the warranty, related to the Defendants' trademarks or the product's name or look.  (*Id*.)

Accordingly, GoSMILE's assertion that it needed additional discovery following the preliminary injunction is completely contradictory to the record, and further evidences GoSMILE's bad faith.

---

[3]      GoSMILE's acknowledgment that Defendants discontinued the use of GLO SMILE WHITENING SYSTEM contradicts the false statement in the Amended Complaint that "On February 1, 2011 Defendants launched a competing at-home light device for teeth whitening . . . under a GLO-based family of trademarks  . . . including "GLO SMILE WHITENING SYSTEM."  (Docket No. 87, at ¶ 5)

B.    GoSMILE's Claim That It Needs a Dismissal Without Prejudice to Protect Its
Marks Is Meritless

GoSMILE's claim that dismissal without prejudice as to marks containing the

components "GO SMILE" or "GLO SMILE" is necessary to protect GoSMILE "from the

confusion it believes would be likely to result from the use of a mark identical or virtually

identical to its house mark" (Docket No. 96, ¶ 15), is a red herring and without merit.   If

Defendants were to actually use a mark containing "the components "GO SMILE" or "GLO

SMILE," that would present a new set of facts.   A dismissal of this action with prejudice as to

the marks containing the terms "GO SMILE" or "GLO SMILE" would not preclude a later suit

based on new facts.   *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) ("while a previous

judgment may preclude litigation of claims that arose 'prior to its entry, it cannot be given the

effect of extinguishing claims which did not even then exist and which could not possibly have

been sued upon in the previous case.'") (quoting *Lawlor v. National Screen Service Corp.,* 349

U.S. 322, 328 (1955)).

C.    GoSMILE'S Conduct Has Been Unduly Vexatious

There is ample evidence of "undue vexatiousness" on the part of GoSMILE in this case.

That vexatiousness, in part, forms the basis of Defendants' motion for their attorneys' fees and

costs, set forth below in Section II.

II

DEFENDANTS SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS

Under the Lanham Act, a court may award attorneys' fees to a prevailing party in

"exceptional cases."   15 U.S.C. § 1117(a).   The Second Circuit has held attorneys' fees may be

awarded upon evidence of bad faith, and that a finding of bad faith is warranted "when the claim

9

is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Baker v. Health Mgmt. Sys., Inc.,* 264 F.3d 144, 149 (2d Cir. 2001).

Attorneys' fees may be awarded following a voluntary dismissal of an action. "A voluntary dismissal with prejudice is 'tantamount to a judgment on the merits,' and, therefore, a district court may in its discretion award attorneys' fees following such a dismissal." *Ritchie v. Gano*, 754 F. Supp. 2d 605, 608 (S.D.N.Y. 2010) (quoting *Beer v. John Hancock Life Ins. Co.*, 211 F.R.D. 67, 70 (N.D.N.Y. 2002).

Attorneys' fees can be awarded to a prevailing defendant in a Lanham Act action where "plaintiff's Lanham Act claim was completely lacking in legal merit and that plaintiff had actual knowledge that its Lanham Act claims was baseless." *Contractual Obligations Productions, LLC v. AMC Networks, Inc.*, 546 F.Supp.2d 120, 131 (S.D.N.Y. 2008) (awarding attorneys' fees incurred after denial of preliminary injunction motion where denial made clear that claim was baseless); *see also National Distillers Products Co., LLC v. Refreshment Brands, Inc.,* 2002 WL 1766548, at *2 (S.D.N.Y. 2002) (awarding defendant attorneys' fees where plaintiff's claim was clearly baseless and found to be vexatious and in bad faith); *IMAF, S.p.A. v. J.C. Penney Co.,* 810 F.Supp. 96, 100 (S.D.N.Y.1992) (attorneys' fees awarded where claims "utterly lacked a solid legal foundation"); *Diamond Supply Co. v. Prudential Paper Prods. Co.,* 589 F.Supp. 470, 476 (S.D.N.Y.1984) (attorneys' fees awarded where claim was "patently baseless").

As direct evidence of bad faith in bringing a trademark action is rarely available, it is not necessary to an award of attorneys' fees. *See, e.g.*, *Contractual Obligations Productions*, 546 F.Supp.2d at 129-31 (awarding attorneys' fees although "there is no direct evidence that plaintiff pursued its trademark infringement claim in bad faith," where plaintiff maintained action after it became clear that claim was baseless). In lieu of direct evidence, courts have considered factors

1430392-1

including (i) the merits of a plaintiff's claim, *see, e.g.*, *id.*; *Viola Sportswear, Inc. v. Mimun,* 574 F.Supp. 619 (E.D.N.Y. 1983) (awarding attorneys' fees where case "was without merit.  One can only speculate about the motives which prompted this suit and in doing so none that are laudable come readily to mind"); (ii) the plaintiff's failure to come forward with evidence of confusion, such as a consumer survey, *see IMAF*, 810 F.Supp. at 100 (awarding fees where plaintiff "failed to prove consumer confusion or to present a survey of any kind that would help establish this element. . . . It is in part this absolute failure to make a sincere attempt validly to establish an essential element of a section 43(a) claim that raises a question as to IMAF's good faith"); (iii) and the effect such an action had on the defendant forced to litigate a baseless action.  *See, e.g.*, *Mennen v. Gillette*, 565 F.Supp. 648, 655 (S.D.N.Y. 1983) ("There is a substantial overtone in this case to warrant an inference that this suit was initiated as a competitive ploy. As such it carries necessary damage to the defendant when the plaintiff's claims are found, as they are here, to have no real substance.")

There are ample grounds for an award of attorneys' fees here:

- GoSMILE never had any legitimate evidence of consumer confusion;

- GoSMILE never conducted an expert survey to show a likelihood of confusion;

- GoSMILE knew that Defendants' product was not called "GLO SMILE" before it even moved for a preliminary injunction; (*See* Point I.A above.)

-  GoSMILE continued to maintain this action after the Court found that GoSMILE's marks were not similar to Defendants (Docket No. 76, pp. 10-14);

- GoSMILE is a competitor of Defendants and has a repeated history of forcing its co-founder Dr. Levine into costly and protracted litigation;

11

- GoSMILE knew Defendants intended to use the name GLO since at least July 2009, but waited until just before the launch of Defendants' products to bring this action and move for a preliminary injunction;

- GoSMILE directed its public relations firm to place a story about the lawsuit in the New York Post which ran on December 9, 2010.  (Bisceglie Dec. ¶¶ 2-3, Ex. A)

- GoSMILE successfully scuttled Defendants' launch with QVC scheduled for January 21, 2011;

- GoSMILE forced Defendants to engage in extensive expedited discovery and briefing, and to prepare for a preliminary injunction hearing, inflicting monumental costs on a start-up company before it had a chance to earn its first dollar;

- GoSMILE forced Defendants to incur the cost of retaining an expert to conduct a consumer survey, without having conducted such a survey itself;

- GoSMILE attempted to manufacture evidence to support its action during the pendency of the preliminary injunction hearing, directing its agent to reinvigorate its "smiley face" "as a logo to strengthen our "GO" family of marks;"  (Bisceglie Dec. Ex. N)

- GoSMILE took extensive party and non-party discovery after the denial of the preliminary injunction, including serving nine subpoenas on Defendants' suppliers, vendors, partners and distributors;

- GoSMILE's harassing discovery demands on Defendants' suppliers, vendors, partners and distributors were part of GoSMILE's effort to thwart Defendants' infant business irrespective of the merits of the claims; and

- GoSMILE approached Defendants about voluntarily dismissing the action only 3 days before the scheduled deposition of Plaintiff and Defendants.

This evidence cumulatively demonstrates GoSMILE's bad faith in bringing and maintaining this action, warranting an award of attorneys' fees and costs to Defendants.

A.    Before Moving for a Preliminary Injunction, GoSMILE Knew that Defendants Would Not Use a Mark or Slogan with the Term "GLO SMILE"

GoSMILE claims that it was concerned that Defendants were using or would use a mark or slogan with the term "GLO SMILE."   In fact, the <u>primary</u> reason cited by Plaintiff for now dismissing its case is that Defendants' product name is "GLO BRILLIANT PERSONAL TEETH WHITENING DEVICE" and not "GLO SMILE WHITENING SYSTEM."   (Docket No. 94, ¶ 10)   As discussed, *supra* Part I.A, Defendants' product name and intended trademarks, have been known to GoSMILE since December 14, 2010, before it moved for a preliminary injunction, when it received Defendants' Answer to the Court Ordered Interrogatory. (Bisceglie Dec. Ex. F)   During expedited discovery in advance of the preliminary injunction hearing, GoSMILE was also given Defendants' products and packaging and these items were received into evidence in the three day hearing conducted by the Court.   (*See* Docket No. 70; Docket No. 76 at pp. 11-14)   Further, these products were available for sale through the Home Shopping Network since February 1, 2011 and at Sephora since May, 2011.   (Docket No. 76, p. 12; Bisceglie Dec. ¶ 15)   Though these facts were known to GoSMILE months ago, GoSMILE persisted in this litigation until the last minute but now claims that consumer confusion is unlikely because Defendants' product is called exactly what it has always been called.

GoSMILE's claim that it needed additional discovery following the preliminary injunction regarding the term "GLO SMILE" is demonstrably false and further evidence of GoSMILE's bad faith.

1430392-1

B.      GoSMILE Prosecuted this Action Knowing it Could Not Satisfy Necessary
        Elements of its Claim

An award of attorneys' fees and costs are appropriate because GoSMILE brought and maintained this action despite the absence of any evidence that could support its claim of confusion between its trademarks and Defendants' marks.

GoSMILE prosecuted this claim for ten months without ever obtaining a survey as to consumer confusion.  At the initial scheduling conference on Plaintiff's preliminary injunction motion, GoSMILE appeared to have surprised the Court and defense counsel by admitting that it had not yet conducted an expert survey *prior* to seeking permission to move for a preliminary injunction.  Although counsel indicated that GoSMILE was in the process of retaining an expert, GoSMILE never came forward with a survey and made its preliminary injunction motion without any expert opinion on the issue of consumer confusion.  (Docket No. 76, p. 15, n. 6)  As the Court noted in its decision denying GoSMILE's motion for a preliminary injunction, GoSMILE's "decision not to proffer an expert was a strategic choice, and not a consequence of the expedited discovery schedule on this motion."  (*Id.*)

At the preliminary injunction stage, GoSMILE presented "thin" evidence of actual consumer confusion, which the Court also deemed "very weak and of little probative value." (Docket No. 76, pp. 19-21).  Even after the Court denied GoSMILE's motion for a preliminary injunction, GoSMILE apparently did not retain an expert to conduct a survey as to consumer confusion.

In *IMAF*, the court awarded attorneys' fees where Plaintiff "failed to prove consumer confusion or to present a survey of any kind that would help establish this element" and Plaintiff's witnesses as to confusion were not credible.  810 F.Supp at 100.  The Court held that attorneys' fees and costs were warranted because:

14

> Knowing that there was no other evidence that could be used to establish consumer confusion, there is no possible way that IMAF reasonably could have expected to succeed on a Lanham Act claim based on section 43(a). It is in part this absolute failure to make a sincere attempt validly to establish an essential element of a section 43(a) claim that raises a question as to IMAF's good faith. *Id.*

This case is applicable here. GoSMILE commenced this action, moved for a temporary restraining order and preliminary injunction, all without any survey and only extraordinarily weak evidence of possible confusion. Even after the Court rejected GoSMILE's purported evidence of confusion, GoSMILE continued to maintain the action for another six months and took extensive party and non-party discovery. As in *IMAF*, there was no plausible scenario where GoSMILE could expect to prevail without any evidence of confusion. Its decision to bring this action and its persistence in prosecuting this action without any evidence of actual confusion and no survey evidence is compelling evidence of bad faith.

C.    GoSMILE Continued to Maintain this Action After it Became Clear it Had No Chance to Succeed

GoSMILE's bad faith is also evidenced by its continuing to litigate this action long after it became clear it had no chance of success on the merits, for the fundamental reason that there is no similarity between its marks and those of Defendants.

In its decision denying GoSMILE's motion for a preliminary injunction, the Court held that "[w]hether viewed in close proximity to one another or separately through different vendors over time, the products' overall impressions are dissimilar and would not likely be confused by a purchaser." (Docket No. 76, p. 14) The Court made this determination after three days of hearings, at which the Court received the parties' various witnesses, documents marks and products into evidence.

15

1430392-1

Although the Court's determinations on the preliminary injunction motion are not necessarily binding at a later stage in the action, it is difficult to conceive of a circumstance where the Court's determination on the similarity of the marks would change.[4]  The Court considered the parties' marks both in close proximity and separately, and found them dissimilar. Defendants do not know of any case where a determination of dissimilarity of marks at the preliminary injunction stage had changed at a later stage of an action.  Nor do Defendants know of any case in which a plaintiff prevailed in a trademark action where the marks at issue were dissimilar.

GoSMILE continuing this action after the Court held that the parties' marks were not similar is evidence of bad faith.  In *Contractual Obligations Productions, LLC v. AMC Networks, Inc.*, 546 F.Supp.2d 120, 131 (S.D.N.Y. 2008), the court awarded attorneys' fees after plaintiff continued to pursue its claim to summary judgment after the court held on its preliminary injunction motion that plaintiff's claim could not succeed.  Based on the denial of the preliminary injunction, plaintiff was on notice that it had no basis for Lanham Act claim and should withdraw it.  The Court awarded attorneys' fees, holding that "because plaintiff's Lanham Act claim was completely lacking in legal merit and that plaintiff had actual knowledge that its Lanham Act claims was baseless, this case does present exceptional circumstances warranting an award of attorneys' fees to defendants."  *Id.*

Similarly, at least since the Court denied its motion for preliminary injunction, GoSMILE knew that it had no chance to succeed in its action based on the Court's findings and its evidence.  The fact that GoSMILE aggressively pressed forward knowing is evidence of GoSMILE's bad faith, warranting an award of attorneys' fees to defendants.

---

[4]     The Court would have been the trier of fact in any trial on the merits because GoSMILE did not demand a jury trial.  (*See* Docket No. 1; Docket No. 87; Docket No. 91)

16

D.      GoSMILE Attempted to Manufacture Evidence During the Pendency of its
        Preliminary Injunction Hearing

GoSMILE's bad faith is further evidenced by its attempt to manufacture evidence during the action that would help its case.

During the preliminary injunction hearing, GoSMILE repeatedly claimed to have a "GO-based family of trademarks."  Because it allegedly had such a family of trademarks, GoSMILE claimed the proper analysis of the similarity of the parties' marks should focus on the purported similarity between the words "GO" and "GLO," in isolation from the marks and packaging as a whole.  (*See* Docket No. 29, pp. 18-20)

In an attempt to establish that it has a "GO-based family of trademarks," at the preliminary injunction hearing on January 20, 2011, Leslie Faust, GoSMILE's CEO and president, testified that GoSMILE had a logo of a smiley face with the word GO inside of it that was in commercial use:

> 22  Q.  Does GO SMiLE also have a trademark for a logo that has the
> 23  word "go" on it?
> 24  A.  Yes.
> 25  Q.  Is that logo in use currently on products?
>  1  A.  Yes.  It is in commercial use.
>  2  Q.  How many products is it in commercial use on?
>  3  A.  I would say currently about three with plans to expand.
>               *       *       *
> 16      I'm going to pull out what we marked as Exhibit 1A,
> 17      which is the registration for the GO SMiLE "go" logo. And your
> 18      Honor, for the record, this is Bates number GO SMiLE 0236176.
> 19  BY MS. SLOANE:
> 20      Q.  And Ms. Faust, is this the GO SMiLE logo that GO SMiLE
> 21      currently uses?
> 22  A.  Yes.
>
> (Jan. 20, 2011 Transcript, Bisceglie Dec. Ex. G, pp. 10-11, 63; Bisceglie Dec. Ex. I)

Just days <u>after</u> the January 20 hearing, however, GoSMILE found it necessary to direct its marketing team to use the logo.  On January 24, GOSMILE's Senior Marketing Manager, Erin Nicoletti, instructed Ky Lewis of Reinhardt Creative, who was apparently producing an insert for GoSMILE, to "Please add somewhere on the insert, our Go SMiLE 'smiley' face.  <u>We have to re-invigorate that as a logo to strengthen our GO family of marks</u>.  Please find the most appropriate use for it."  (Emphasis added) (Bisceglie Dec. Ex. N).  Mr. Lewis responded "Can you send me the eps or ai for the smiley face. I can't find it in our files."  (*Id.*)  In response, Ms. Nicoletti sent Mr. Lewis a .pdf file containing samples of the smiley face logo, stating "Here you go!  Most of them are in outdated colors, but they can be easily swapped out."  (*Id.*)

While Defendants were denied an opportunity to explore this series of emails at deposition, it indicates that, while the preliminary injunction hearing was ongoing, GoSMILE attempted to create confusion and manufacture evidence to bolster its claim of a "GO-based family of trademarks."  Moreover, Mr. Lewis's response that Reinhardt Creative did not have the logo in its files, and Ms. Nicoletti's reply with the smiley faces logo in "outdated colors," tellingly indicate that the smiley face logo was not prominently in commercial use at the time.

Moreover, GoSMILE claimed throughout the litigation that there was a considerable likelihood of confusion between its and Defendants' marks because its marks are "Go-based," and "Go" is similar to "Glo."  According to GoSMILE's theory, the likelihood of confusion increased if GoSMILE used the word "Go" alone as a mark.  GoSMILE apparently sought to do exactly that, in a misguided attempt to help its litigation against Defendants.

*Therapy Products, Inc. v. Bissoon*, 2009 WL 2709279 (S.D.N.Y. Aug. 26, 2009) is instructive.  There, plaintiff alleged in its complaint that it had used the term "lipolaser" as a trademark consistently since 2001.  *Id.*, 2009 WL 2709279 at *1.  However, plaintiff's president

admitted at his deposition that the term was only used sporadically, and documentary evidence proved that to be the case. *Id.* Nevertheless, plaintiff continued to falsely assert, in a declaration and memorandum of law in opposition to summary judgment, it used the term continuously. *Id.*, 2009 WL 2709279 at *1-*2. The court found that plaintiff's assertions in its complaint were "meritless and not well grounded in fact," and awarded defendant attorneys' fees based on plaintiff's bringing and maintaining the action premised on a falsehood.

Similarly here, GoSMILE claimed to currently use the smiley face logo. Recognizing that the logo was not prominently in use (if it was actually in use at all), GoSMILE attempted to "re-invigorate" it. GoSMILE's attempt to manufacture use of the smiley face logo by directing its use while the preliminary injunction hearing was pending is further evidence of GoSMILE's bad faith in bringing, maintaining, and conducting this action.

E.    GoSMILE Engaged in Costly and Wide-Ranging Discovery After the Preliminary Injunction Motion was Denied

After the denial of GoSMILE's motion for a preliminary injunction, GoSMILE engaged in broad and costly discovery that was not narrowly tailored to seek information relating to consumer confusion. GoSMILE served its second set of interrogatories on Defendants on or around May 13, 2011; none related to confusion. (Bisceglie Dec. Ex. K)  GoSMILE made nine additional document requests. (*Id.* Ex. J)  Only one related to consumer confusion. (*Id.*) GoSMILE's other requests related to issues such as the quality of Defendants' product, modifications to its design or technical functioning, and customer satisfaction. (*Id.*)  These requests required Defendants' and their attorneys' to devote hundreds of hours reviewing approximately 116,000 documents for production to GoSMILE. (Bisceglie Dec. ¶ 6)

GoSMILE also served nine subpoenas upon key companies and key persons that worked with Defendants. (Bisceglie Dec. Ex. M)  Those parties produced over 21,000 additional pages

1430392-1

of documents.  (Bisceglie Dec. ¶ 6)  Again, GoSMILE did not focus its subpoenas exclusively to vendors who may have information relevant to consumer confusion such as Home Shopping Network and Sephora, but also subpoenaed parties including Design Catapult (engaged in product design and development), CTI (engaged in packaging), The Forsyth Institute (engaged in clinical testing), Lahlouh (engaged in printing user guides), and Paul Freund (engaged in packaging).  (Bisceglie Dec. Ex. M).  The document requests to these subpoenaed parties did not seek documents relating to actual confusion.  (*Id.*)  Additionally, Defendants reviewed more than 1,800 additional documents, containing more than 23,000 pages, produced by GoSMILE. (Bisceglie Dec. ¶ 6)

GoSMILE's discovery was expansive, and imposed significant costs on Defendants and third parties and had an adverse impact on Defendants' infant company.

F.    GoSMILE Delayed Communicating to Defendants About Dismissal of the Action Until Days Before Scheduled Depositions of Plaintiff and Defendants

As shown above, GoSMILE has long known that it lacked any evidence of actual confusion, and that its case lacked merit.  Despite this, GoSMILE did not propose dismissing the action, delaying document discovery or postponing depositions, until three days before depositions were to begin and ten days before the close of discovery.

In its letter seeking a pre-motion conference (Bisceglie Dec. Ex. D) and its motion, GoSMILE asserts that it attempted to "minimize litigation expense by focusing on third-party document discovery and postponing depositions."  (Docket No. 94, p. 8)  GoSMILE, however, never communicated any such intention to Defendants, who were forced to prepare for five

depositions only to have them cancelled when GoSMILE decided to cease prosecuting this action at the eleventh hour.  (Bisceglie Dec. ¶¶ 8-11)[5]

The parties agreed that Defendants would take the deposition of Leslie Faust and the 30(b)(6) deposition of GoSMILE on August 24, 2011, and that GoSMILE would take the depositions of Stacey Levine, Dr. Levine and Stuart Blinder (an independent consultant of Defendants) deposition between September 13 and 15, 2011.  (Bisceglie Dec. ¶ 8)  On August 17, 2011, one week before the scheduled depositions of Ms. Faust and GoSMILE's 30(b)(6) designee, GoSMILE wrote to advise that it was still reviewing additional documents for production, which it anticipated it would complete by the end of that week, and proposed postponing Ms. Faust's deposition to September 9, 2011.  (Bisceglie Dec. Ex. C)  In light of GoSMILE's representation, Defendants agreed.

GoSMILE never communicated any desire to slow down the case or minimize litigation costs while it focused on confirming the absence of consumer confusion through third party discovery.  Rather, GoSMILE communicated only that the depositions of its witnesses needed to be postponed because GoSMILE had yet to finish reviewing and producing relevant documents.  Despite GoSMILE's stated basis for postponing depositions, it never produced <u>any</u> additional documents.  (Bisceglie Dec. ¶ 10)

As it was required to, Defendants continued to prepare for the five depositions scheduled to be held between September 9, 2011 and September 15, 2011.  (*Id.* ¶ 11)  GoSMILE first proposed postponing the depositions and a possible dismissal of its case on September 6, 2011.

---

[5]    GoSMILE used the same tactic in expedited discovery before the preliminary injunction hearing, demanding depositions in a highly-truncated period including seeking and obtaining permission to depose Stacey Levine from the Court.  After Defendants had prepared for depositions, GoSMILE, then, expressed it would not proceed with depositions in expedited discovery.  (Bisceglie Dec. ¶  7)

(*Id.* ¶ 14)  GoSMILE's belated concession caused Defendants to needlessly spend extensive time preparing for depositions that never took place.

Defendants also expended additional resources in having Hal Poret, Defendants' expert, begin to work on a mall intercept survey in anticipation of the October 14, 2011 deadline for all expert discovery.  (*Id.* ¶ 14)  At the preliminary injunction hearing, GoSMILE asserted that a mall intercept survey would be a more accurate measure of consumer confusion.  (Feb. 17, 2011 Transcript, Bisceglie Dec. Ex. B, pp. 185-87)  In anticipation that GoSMILE would conduct its own mall intercept survey and again assert that the internet surveys Mr. Poret already conducted were insufficient, Defendants asked Mr. Poret to also conduct a mall intercept survey.  (Bisceglie Dec. ¶ 11)  Mr. Poret's work on the mall intercept survey is an additional expense that could have been avoided had GoSMILE moved to withdraw the action in a timely manner.

      G.       The Action has Substantial Overtones of a Competitive Ploy

There is substantial evidence that GoSMILE brought this action, with funding from its parent company, J. H. Partners (*see* Feb. 17, 2011 Transcript, Bisceglie Dec. Ex. B, at 252, 262-63), to bring Defendants' nascent company to its knees before it had the opportunity to bring its products to market and generate any revenue.

Defendants and GoSMILE are more than just competitors.  Dr. Levine is, along with his wife Stacey, the co-founder of GoSMILE (Docket No. 76, p. 2)  and was a shareholder, officer and director until July 2007 when outside investors, led by California-based private equity investor, John C. Hansen, forced Dr. Levine out of GoSMILE.  (Docket No. 35, ¶ 6)  Hansen's company, J.H. Partners, continues to own GoSMILE, and is financing this litigation.  (Feb. 17, 2011 Transcript, Bisceglie Dec. Ex. B, pp. 252, 262-63)  Since Dr. Levine's ouster from GoSMILE, Dr. Levine and GoSMILE have repeatedly been embroiled in litigation, including the

pending action in New York County Supreme Court, which was commenced by GoSMILE in July 2009.  (Docket No. 33, ¶¶ 2-8)

GoSMILE brought this action and sought a preliminary injunction just before GLO Science was to launch the GLO Brilliant Personal Teeth Whitening Device on QVC on January 21, 2011.  (Feb. 17, 2011 Transcript, Bisceglie Dec. Ex. B, pp. 205-07)  When GoSMILE brought this action, GLO Science had not sold a single product.  The expense of the lawsuit threatened to destroy GLO Science before it ever had an opportunity to generate revenue.

GoSMILE's lawsuit succeeded in stopping GLO Science from launching its products with QVC on January 21.  GoSMILE's public relations firm, Allison Brod Public Relations, arranged for the New York Post to publish an exclusive article about this action.  (Feb. 17, 2011 Transcript, Bisceglie Dec. Ex. B, pp. 260-62).  After the New York Post published its story pitched from GoSMILE's public relations firm, QVC informed Defendants that it would not go forward with the launch until the litigation was resolved.  (*Id.*, p. 207)  The launch with QVC was ultimately scrapped due to the litigation, and Defendants were forced to scramble to arrange a launch on another network, HSN, on February 1, 2011.  (*Id.*, p. 208; Docket No. 35, ¶ 20) Thus, GoSMILE's action significantly damaged Defendants' business.

The timing of GoSMILE's action was particularly vexatious.  GoSMILE delayed for over a year from when it knew of Defendants' plan to launch products under the name GLO or Guided Light Optics.  In late 2008 or early 2009, counsel for GoSMILE and J.H. Partners obtained documents stolen by a former employee of the Dental Practice that referred to GLO. (Docket No. 35, ¶ 15)  Further, in July 2009, GoSMILE filed a complaint that alleged that Dr. Levine engaged in development of a product to be called GLO.  (Bisceglie Dec. Ex. E, ¶¶ 40-41

23

and Exhibit D)  GoSMILE nonetheless waited until November, 2010 to file its action and did not

seek an injunction until December, 2010, just months before Defendants' launch.

At the Court conference on April 8, 2011, the Court admonished the parties:

> I have to tell you, I don't know how this case will end up, I'm not prejudging anything, but one of the issues I would consider at the end of the case is whether or not positions were taken in bad faith, whether there were efforts made to make the proceedings more difficult or more expensive to basically grind one party into bankruptcy or insolvency.  And there is plenty of authority under 28 U.S.C., Section 1927 and the inherent power of the Court.  I believe there may be other case law and statutory support.  But I just will alert the parties to that.  That is something I will visit at the end of the case.  If I find that this was recreational litigation, part of an ongoing war that GoSmile has with Dr. Levine as was brought in the state courts, and as seems to be perpetually pursued, and if I conclude that any positions were taken in bad faith, I will impose all sanctions that are available under law against the offending party.  And that's a two-way street.  That's both sides.
>
> Just, presiding as I have over matters, you develop an instinct for these things, and it is certainly not a warning that I've given in every case.  This case, I think it's appropriate to give that warning, lest anybody be surprised.  (Bisceglie Dec. Ex. H at pp. 8-9)

Defendants believe the Court's concern was well-founded and have maintained since the

start of this action that GoSMILE's motives in bringing this action were never rooted in

trademark law but rather were in Plaintiff's desire to harm Dr. Levine.

In *Mennen Co. v. Gillette Co.*, 565 F.Supp. 648 (S.D.N.Y. 1983), the court awarded

attorneys' fees where plaintiff maintained an action with a flawed survey and where there was no

substantial similarity between the parties' marks.   The court held: "There is a substantial

overtone in this case to warrant an inference that this suit was initiated as a competitive ploy.  As

such it carries necessary damage to the defendant when the plaintiff's claims are found, as they

are here, to have no real substance."  *Id.* at 657; *see also Universal City Studios, Inc. v. Nintendo*

*Co.*, 615 F.Supp. 838, 864 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 70 (2d Cir. 1986) (upholding a fee

award based on the district court's finding after trial that the plaintiff brought infringement claims merely to "serve ulterior business motives" rather than any "sincere belief in the merits of the underlying claims.").

The same applies here. The evidence supports the conclusion that GoSMILE brought this action to harm its potential competitor, GLO Science, and Dr. Levine in yet another litigation.

H.    GoSMILE's Belated Concession that its Claim Lacks Merit and its Motion to Voluntarily Dismiss the Action Does Not Preclude an Award of Attorneys' Fees

GoSMILE's belated concession that its claim lacks merit should not save GoSMILE from liability for Defendants' attorneys' fees after ten months of vigorous litigation. In *Viola Sportswear v. Mimun*, 574 F.Supp. 619 (E.D.N.Y. 1983), plaintiff, like GoSMILE here, insisted that any agreement to discontinue the meritless action also release plaintiff from any liability or sanctions arising from its commencement of the action. After the defendant moved unopposed for summary judgment, the court granted attorneys' fees to defendant pursuant to the Lanham Act, 11 U.S.C. § 1117, holding that the case was without merit, and "[o]ne can only speculate about the motives which prompted this suit and in doing so none that are laudable come readily to mind." *Id.* at 621.

Here as well, GoSMILE's belated motion to discontinue the action should not rescue GoSMILE from the consequences of commencing and continuing this action in bad faith.

Conclusion

For the foregoing reasons, Defendants respectfully request that the Court enter an order and dismissing the action in its entirety with prejudice and awarding Defendants' reasonable attorneys' fees and costs for defending this action, with the amount to be determined upon the submission of documentation of such fees and costs.

25

Dated: New York, New York
      October 19, 2011

                                OLSHAN GRUNDMAN FROME
                                ROSENZWEIG & WOLOSKY LLP

By:  /s/ Kyle C. Bisceglie
       Kyle C. Bisceglie
       Howard J. Smith
       Joshua S. Androphy
       *Attorneys for Defendants*
       Park Avenue Tower
       65 East 55th Street
       New York, New York 10022
       (212) 451-2300

1430392-1