UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GO SMILE, INC., a Delaware Corporation,<br><br>                       Plaintiff,<br><br>            -against-<br><br>DR. JONATHAN B. LEVINE, D.M.D. P.C., a<br>New York corporation, and DR. JONATHAN B.<br>LEVINE, an individual, GLO SCIENCE, LLC, a<br>Delaware Limited Liability Company, and JBL<br>RADICAL INNOVATIONS, LLC,<br><br>                 Defendants. | Index No. 10 CV 8663 (PKC)(DCF) |

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES

---

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Defendants*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

1469098-2

Table of Contents

Page

Preliminary Statement....................................................................................................................1

Argument .......................................................................................................................................1

      A.     GoSMILE Sought a Preliminary Injunction and Prosecuted This Action for Nine Months After Learning Defendants Were Not Using Any Mark Involving "GLO SMILE" or Any Similar Mark........................................................1

      B.     GoSMILE's Claim That It Needed Discovery From Sephora Before Dismissing Its Case Is False ..............................................................................3

      C.     GoSMILE Litigated This Action With No Good Faith Basis to Believe It Would Uncover Evidence That Would Allow It to Succeed on Its Trademark Claims...............................................................................................5

      D.     GoSMILE Did Not Limit Discovery to Actual Confusion ...................................6

      E.     GoSMILE Mischaracterizes Its Promotion of This Case in the Press ....................6

      F.     GoSMILE's Attempt to Explain Away Its Efforts to Create Evidence of a "GO Family" of Marks Fails................................................................................7

      G.     GoSMILE Fails to Distinguish This Case From Those Cited in Defendants' Brief...............................................................................................8

Conclusion ...................................................................................................................................11

1469098-2

Defendants Dr. Jonathan B. Levine D.M.D. P.C. ("Levine P.C."),  Dr. Jonathan B. Levine ("Dr. Levine"), GLO Science, LLC ("GLO Science,") and JBL Radical Innovations, LLC (collectively "Defendants"), by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, submit this memorandum of law in further support of Defendants' motion for attorneys' fees and costs.

### Preliminary Statement

As Defendants will demonstrate below, in its opposition to Defendants' motion for attorneys' fees, GoSMILE obscures the record and the chronology of its own actions in this case. The record, however, is clear that GoSMILE continued litigating this case well after it knew what trademarks Defendants would use in connection with their product and well beyond the point at which there could be no doubt that it could not prevail in this case.  We respond to the issues raised in GoSMILE's opposition.

### Argument

A.    GoSMILE Sought a Preliminary Injunction and Prosecuted This Action for Nine Months After Learning Defendants Were Not Using Any Mark Involving "GLO SMILE" or Any Similar Mark

Defendants have shown that GoSMILE's trademark action was "asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Therapy Products, Inc. v. Bissoon*, 2009 WL 2709279, *2 (S.D.N.Y. Aug. 26, 2009) (quoting *Baker v. Health Mgmt. Sys., Inc.,* 264 F.3d 144, 149 (2d Cir. 2001)),  and that GoSMILE knew long before moving for a preliminary injunction that Defendants would not use a mark containing the component "GLO SMILE."  In opposition, GoSMILE defends its continued prosecution of this action up to the close of fact discovery by asserting, falsely, that Defendants did in fact intend to use the mark "GLO SMILE."

1469098-2

GoSMILE's assertion that Defendants intended to use the mark "GLO SMILE" or any similar marks is plainly wrong.  GoSMILE knew before it moved for a preliminary injunction that Defendants had no intention to use such marks.  The only evidence GoSMILE can muster of Defendants' purported intent to use such marks is the appearance of the names GLO SMILE WHITENING SYSTEM and GLO BRILLIANT SMILE WHITENING SYSTEM on versions of Levine P.C.'s and gloscience.com's websites in mid-November, 2010.  (Sloane Dec. Exs. 12-13)  However, GoSMILE learned conclusively that Defendants were not using the name GLO SMILE WHITENING SYSTEM or GLO BRILLIANT SMILE WHITENING SYSTEM well *before* expedited discovery and the preliminary injunction motion:

- GoSMILE's observed in an email on November 23, 2010 that gloscience.com had changed the term "Glo Brilliant Smile Whitening System" to "Glo Brilliant Personal Teeth Whitening Device."  (Sloane Dec. Ex. 14)

- On December 3, 2010, GoSMILE's counsel acknowledged in a letter to Defendants' counsel that GLO SMILE WHITENING SYSTEM and "GLO Brilliant Smile Whitening System" had been removed from jonathanblevine.com and gloscience.com, respectively.  (Bisceglie 11/16/11 Dec. Ex. A)

- Defendants' counsel stated in a December 8, 2010 letter that Defendants "have no plan to use the term 'GLO SMILE WHITENING SYSTEM.' as set forth in the complaint."  (Sloane Dec. Ex. 10)

- Defendants' counsel reiterated the point again in a December 9, 2010 letter. (Bisceglie 11/16/11 Dec. Ex. B)

- Defendants' response to the Court-ordered interrogatory, served December 14, 2010, identified the trademarks Defendants would use in connection with its products as:  1) GLO | Brilliant Personal Teeth Whitening Device, 2) GLO | Brilliant Whitening Gels, and 3) GLO | Brilliant Mouthpiece and Case.  (Docket No. 97. Ex. F)

If even an infinitesimal doubt remained, it was put to rest when GoSMILE received additional evidence in the course of expedited discovery, where Defendants produced their actual packaging, made their products available to GoSMILE for inspection and produced scores of emails and other documents discussing the products and their packaging.  If even that evidence

1469098-2

was insufficient for GoSMILE, it could have taken the depositions of Dr. Levine and Mrs. Levine before the preliminary injunction hearing or immediately afterwards.  (*See* Docket No. 76, p.4 n.3)

At the preliminary injunction hearing, GoSMILE questioned Dr. Levine.  Additionally, Defendants' actual products and packaging were admitted into evidence.  Both further established that Defendants product is the "Glo Brilliant Personal Teeth Whitening Device," and that Defendants were not using any mark containing the word "Smile."  Defendants' products went on sale to the public on February 1, 2011; there was no longer any basis upon which GoSMILE could claim doubt as to Defendants' product name.  Finally, the Court's Memorandum and Order, dated March 7, 2011, explicitly held that "defendants do not market a product called 'Glo Smile'" and established beyond any reasonable doubt the trade name Defendants used.  (Docket No. 76, p. 13)

Despite all of these indications, GoSMILE carried on as it now says to confirm Defendant were not using the "GLO SMILE" mark.  That GoSMILE continued its litigation of this case for months is compelling evidence of GoSMILE's bad faith.

> B.    GoSMILE's Claim That It Needed Discovery
>        From Sephora Before Dismissing Its Case Is False

GoSMILE also attempts to justify its delay in dismissing this action on the basis that it needed to take discovery from Sephora to determine whether there was any evidence of actual confusion.  GoSMILE's stated justification is demonstrably false.

According to GoSMILE, one of the major reasons why it belatedly agreed to dismiss its action is that it received documents from Sephora that failed to show actual confusion, and also written assurances from Sephora that it had located no evidence of actual confusion between GoSMILE's and Defendants' products.   (Docket No. 94, p. 5; Plaintiff's Br. in Opp. to

1469098-2

Defendants' Motion for Attorneys' Fees, p. 12)   GoSMILE's story is contradicted by the sequence of events in this case.

Specifically, the timeline of Sephora's production and GoSMILE's agreement to dismiss shows that GoSMILE decided to dismiss before receiving any assurances from Sephora that there was no consumer confusion:

- August 10, 2011:  Sephora makes an initial production of 295 pages.  (Lupkin Dec. ¶ 13)

- August 30, 2011:  GoSMILE completes its review of Sephora's 295 pages of documents, confirms there was no evidence of actual confusion, and attempts to reach Defendants' counsel by telephone.  (Sloane Dec. ¶ 47)[1]

- September 6, 2011:  GoSMILE's counsel speaks to Defendants' counsel and for the first time advises that it wishes to discontinue the action.  (Docket No. 96, ¶ 12)

- September 9, 2011:  GoSMILE's counsel writes to the Court requesting a pre-motion conference on its contemplated motion under Rule 41(a)(2) to dismiss the action.  (Bisceglie 11/16/11 Dec., Ex. C)

- September 9, 2011:  Sephora produce an additional 20 pages and confirms that "none" of the customer reviews that were removed from Sephora.com "appear to [be] related in any way to 'confusion' between the GLO and GoSmile products." (Lupkin Dec. Ex. R)

-  September 14, 2011:  Sephora's counsel writes to GoSMILE's counsel regarding its subpoena, stating that since "Go Smile is no longer pursuing those claims [of this action], Sephora will take no further action in response to the Federal Subpoena.  (Lupkin Dec. Ex. S)[2]

This timeline shows that GoSMILE's claim that it could not dismiss the action until it received evidence from Sephora that there was no confusion between Defendants' and

---

[1]    Defendants note that it took GoSMILE almost three weeks to review these 295 pages.

[2]    In its brief, GoSMILE states that "when no document produced [by Sephora] contained evidence of actual confusion, GoSMILE asked for written assurances from Sephora that it was unaware of any such confusion in the marketplace" and that "Sephora finally provided those assurances on September 14, 2011."  (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, p. 12)  As evidence of this, GoSMILE cites to a September 14, 2011 letter from counsel for Sephora which appears as Exhibit S to the Declaration of Jonathan D. Lupkin.  The letter, however, contains no reference to any such assurances.  As noted above, GoSMILE has already decided to dismiss its case in any event.

1469098-2

GoSMILE's products is a false pretext.  In fact, GoSMILE had contacted Defendants' counsel and wrote to the Court *before* it received any purported assurances from Sephora about consumer confusion and before Sephora completed its production.  GoSMILE's attempt to justify its delay in dismissing the action on a need to receive information or assurances from Sephora is unavailing.

C.      GoSMILE Litigated This Action With No Good Faith Basis to Believe It Would Uncover Evidence That Would Allow It to Succeed on Its Trademark Claims

As set out in detail in Defendants' moving brief, GoSMILE continued to prosecute this action after it should have known it could not prevail.

In denying GoSMILE's preliminary injunction motion the Court held that GoSMILE and Defendants' "products' overall impressions are dissimilar and would not likely be confused by a purchaser."  (Docket No. 76, p. 14)  GoSMILE fails to identify a *single* case where such a finding was made on a preliminary injunction motion and reversed at a later stage of the litigation.  Nor does GoSMILE identify any case where a plaintiff has succeeded where the parties' marks were dissimilar.  Without any similarity between the marks, GoSMILE had no chance of succeeding in its trademark action, and should have dismissed the action.[3]

GoSMILE also lacked evidence of actual confusion.  GoSMILE is correct that a trier of fact may find that confusion exists in the absence of a survey, "*so long as there is other evidence of actual confusion*."  (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, p. 25, quoting *Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996)) (emphasis added) Here, GoSMILE had no evidence of actual confusion.  The evidence of purported confusion GoSMILE cites in its brief on this motion is entirely the same evidence it presented at the

---

[3]      As noted in Defendants moving brief, the Court would be the finder of fact in any trial since there was no jury demand in this case.

1469098-2

preliminary injunction hearing.  That evidence did not show any confusion and was rejected by the Court as "very weak and of slight probative value."  (Docket No. 76, p. 21)

GoSMILE's attempt to distinguish *IMAF, S.p.A. v. ZJ.C. Penney Co.*, 810 F.Supp. 96 (S.D.N.Y. 1992) as "inapposite" fails.  As in *IMAF*, GoSMILE pressed forward with its trademark action after its purported evidence of consumer confusion was flatly rejected, and without obtaining an expert survey to prove consumer confusion.

> D.      <u>GoSMILE Did Not Limit Discovery to Actual Confusion</u>

In its motion to dismiss its own case, GoSMILE claimed that its discovery following the preliminary injunction was focused on actual confusion.  (Docket No. 94, ¶ 9)  In opposition, Defendants demonstrated that this was false:  GoSMILE's discovery after the preliminary injunction was broad, relating to all conceivable matters concerning Defendants' products.  (*See* Docket No. 98, pp. 19-20)

In response, GoSMILE now contends that it was proper to take discovery on all of the *Polaroid* factors.  Defendants do not dispute this — apart from the fact that that *all* discovery was unnecessary and wasteful, because it was clear that GoSMILE's claim lacked merit.  But GoSMILE cannot assert that its discovery was narrowly tailored on the issue of actual confusion when GoSMILE actually wide ranging discovery requests — on Defendants and numerous third-parties — that had no connection to the issue of actual confusion.

> E.      <u>GoSMILE Mischaracterizes Its Promotion of This Case in the Press</u>

GoSMILE blatantly mischaracterizes its own use of the press in connection with this action.  Defendants' have shown that GoSMILE's public relations firm pitched an exclusive story about this action to the New York Post that ran on December 9, 2010, further evidencing that this action was a competitive ploy to disrupt Defendants' business.  The New York Post article caused QVC to drop its plans to launch Defendants' products.  (Docket No. 98, p. 23)

1469098-2

GoSMILE's fails to address that it paid and instructed its public relations firm to pitch the story to the New York Post.  Instead, GoSMILE discusses a press release issued two weeks later and states that such press release was issued in response to the New York Post article.  (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, p. 15)  It was GoSMILE's own public relations firm, however, that pitched that story to the New York Post in the first place as demonstrated in a report from GoSMILE's public relations firm.  (Bisceglie 11/16/11 Dec., Ex. D)  GoSMILE's public relations campaign is further evidence that this litigation was never about trademark law but rather was about GoSMILE's efforts to harm Dr. Levine and a competitor.

In addition, the New York Post article and the litigation did succeed in scuttling Defendants' QVC launch.  (Feb. 17, 2011 Transcript, Docket No. 97 Ex. B, pp. 207-08) GoSMILE points to emails purportedly showing that Defendants switched from QVC to HSN voluntarily, because HSN offered a better deal and because there were issues with QVC labeling, quality testing, and financial terms.  (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, pp. 16-17)  In fact, as Dr. Levine testified at the hearing, QVC told Dr. Levine its legal department put the launch on hold because of this action and the New York Post article about this action.  (Feb. 17, 2011 Transcript, Docket No. 97, Ex. B, pp. 207-08)  That Defendants entered negotiations with HSN while continuing talks with QVC for a postponed launch does not negate the fact that GoSMILE's lawsuit and public relations effort succeeded in scuttling the January 21, 2011 launch on QVC.

> F.      GoSMILE's Attempt to Explain Away Its Efforts
>         to Create Evidence of a "GO Family" of Marks Fails

GoSMILE's meager attempt to explain away evidence showing it was attempting to manufacture proof of its use of its smiley face logo while its preliminary injunction motion was pending in unpersuasive.  GoSMILE's flatly states that the January 24 email from Erin Nicoletti

<div align="center">7</div>

directing use of GoSMILE's smiley face logo "somewhere," to "re-invigorate that as a logo to strengthen to GO family of marks," (Docket No. 97, Ex. N), is simply "a business decision to strengthen GO SMiLE's family of marks, and is in no way related to the ongoing litigation with Defendants." (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, p. 28)  GoSMILE does not submit a declaration from Ms. Nicoletti[4], or anyone else at the company, stating that this is so. Nor do any of the 81 exhibits GoSMILE submitted in opposition to this motion support its claim that it adopted a business decision to re-invigorate its family of marks, and, specifically, the smiley face logo.  That such purported business decision coincidentally was acted upon in the midst of a hearing on GoSMILE's preliminary injunction motion, just days after its CEO was questioned about the logo, is the type of "unfortunate coincidence" in time that strains credulity and speaks for itself.

> G.     GoSMILE Fails to Distinguish This Case From Those Cited in Defendants' Brief

GoSMILE fails to distinguish its conduct in this case from that of the plaintiffs in the cases Defendants cite in their moving brief.  Tellingly, the *only* basis upon which GoSMILE attempts to distinguish the cases awarding attorneys' fees for conduct similar to GoSMILE's is that in most of those cases "the plaintiffs proceeded to later stages in the litigation than in this case." (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, p. 28)  GoSMILE admits by silence the similarities identified by Defendants between GoSMILE's conduct and that of plaintiffs in other cases where attorneys' fees were awarded under the Lanham Act.

GoSMILE concedes that fees may be awarded for a case that does not proceed to the summary judgment stage, but nonetheless attempts to distinguish *Ritchie v Gano*, 754 F.Supp.2d 605 (S.D.N.Y. 2010).  In *Ritchie*, attorneys' fees were awarded against plaintiff after the parties

---

[4]     Ms. Nicoletti did submit a Declaration in support of GoSMILE's motion for a preliminary injunction. (Docket No. 45.)

1469098-2

voluntarily dismissed plaintiff's action, because the action was "oppressive and was litigated by Ritchie with excessive lawyering."  *Id.* at 609.  GoSMILE's conduct, outlined in Defendants' moving brief, was oppressive, even if it differed from the conduct in *Ritchie*.  Here, GoSMILE did in fact engage in excessive lawyering.  GoSMILE unnecessarily caused the preliminary injunction hearing to drag on for three days, devoting more than a full day to examining Dr. Levine, delving into a level of minutia that the Court observed was inappropriate for a preliminary injunction hearing.  (*See* Feb. 16 Hearing Tr. at pp. 107-09)  GoSMILE's drawn out examination of Dr. Levine compelled the Court to impose time limits on the parties on the third day of the preliminary injunction hearing.  (Feb. 17 Hearing Tr. at pp. 135-36)  GoSMILE also continued to engage in expansive discovery well after it knew it had no likelihood of success in this action.[5]

GoSMILE also falsely asserts that *Ritchie* is the only case Defendants cite for awarding attorneys' fees in a procedural posture similar to this action.  In *Viola Sportswear v. Mimun*, 574 F.Supp. 619 (E.D.N.Y. 1983), the court awarded attorneys' fees after the plaintiff offered to stipulate to dismissal of its action, but insisted, as GoSMILE did here, that such stipulation release the plaintiff from any liability or sanctions arising from its conduct in commencing and maintaining the action.  GoSMILE's description of the decision as "awarding fees after plaintiffs defended and lost a motion for summary judgment" is inaccurate.  (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, p. 29).  Plaintiff in *Viola* did not oppose defendants' summary

---

[5]      In *Ritchie*, one example of plaintiff's litigation excess was his filing of a brief in opposition to the attorneys' fees motion in excess of the court's page limit without prior authorization, seeking leave to do so simultaneous with his filing.  *Ritchie*, 754 F.Supp.2d at 608 n. 1.  GoSMILE has been a recidivist violator of the Court's page limits in this action, exceeding the page limits by twenty pages in its reply brief on the preliminary injunction motion, and by five pages on this motion.  On both occasions GoSMILE only belatedly asked the Court for permission to do so.

1469098-2

judgment motion.  *Viola*, 574 F.Supp. at 620 ("The motion for summary judgment was unopposed and was granted").

GoSMILE further asserts that the mere fact that its preliminary injunction motion was denied does not, by itself, warrant attorneys' fees.  (Plaintiff's Br. in Opp. to Motion for Attorneys' Fees, pp. 24-25)  Yet Defendants do not base their motion for attorneys' fees solely on the fact that GoSMILE's preliminary injunction motion was rejected.  Rather, Defendants' motion is additionally based on extensive evidence that the action was brought and maintained as a competitive ploy to damage a competitor (against whom GoSMILE has a long history of litigation), that it continued well after the Court's denial of its preliminary injunction and lengthy opinion *and* the fact that GoSMILE's action was devoid of merit.  The evidence of GoSMILE's improper purpose sharply distinguishes this case from *Multivideo Labs, Inc v. Intel Corp.*, 2000 WL 502866 (S.D.N.Y. April 27, 2000), and *Hartz & Co v. Italia, Inc.*, 1998 WL 252047 (S.D.N.Y. May 19. 1998), cited by GoSMILE, in which motion for attorneys fees were denied in the absence of evidence that the trademark actions were brought for an improper purpose.

"Congress' passage of the [Lanham] act was not intended to protect and serve only plaintiffs.  The attorneys' fee provision 'endeavor[s] to afford protection to defendants against unfounded suits brought by trademark owners for harassment and the like.'"  *IMAF, S.p.A. v. J.C. Penney Co.*, 589 F.Supp. 96, 100 (S.D.N.Y. 1992) (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521, 524 (D.C. Cir. 1985)).  Defendants respectfully submit that, based on GoSMILE's pattern of conduct in this action, an award of attorneys' fees under the Lanham Act is especially appropriate here.

1469098-2

<u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that the Court enter an order

and awarding Defendants' reasonable attorneys' fees and costs for defending this action, with the

amount to be determined upon the submission of documentation of such fees and costs.

Dated: New York, New York
      November 16, 2011

<div style="margin-left: 50%;">

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP


By:  /s/ Kyle C. Bisceglie
       Kyle C. Bisceglie
       Howard J. Smith
       Joshua S. Androphy
       *Attorneys for Defendants*
       Park Avenue Tower
       65 East 55th Street
       New York, New York 10022
       (212) 451-2300

</div>

11

1469098-2